OPINION
Appellant, David Griffiths, timely appeals from the judgment entered by the Trumbull County Court of Common Pleas. A jury found Griffiths guilty of two counts of gross sexual imposition.
During the spring of 1995, Griffiths dated the victim's mother. The victim was eleven years old during this time. She would go over to Griffiths' apartment some Saturdays to help Griffiths clean. Her mother would drop her off at the apartment and come back to pick her up at a later time.
The victim claims that Griffiths touched her inappropriately during these visits. Specifically, she said that Griffiths inserted his finger into her vagina, sucked on her breasts, and made her wash him in the bathtub while he was naked.
Griffiths and the victim's mother broke off their relationship in the summer of 1995. There was minimal contact between the two of them over the next five years, as they only came across each other a few times on chance meetings, including one in Kmart.
In the spring of 2000, the victim began having nightmares, in which her boyfriend was doing the things to her that Griffiths had done. The setting of these dreams was Griffiths' apartment. She told her boyfriend about these dreams, and he advised her that she should tell her mother about what happened with Griffiths. She then told her mother, who contacted the authorities. The victim had not told anyone else about the sexual incidents with Griffiths until these nightmares.
The Trumbull County Grand Jury initially indicted Griffiths on April 3, 2000, with three counts of rape. On May 5, 2000, the indictment was changed to two counts of rape and one count of gross sexual imposition. Finally, on July 6, 2000, the indictment was changed to one count of felonious sexual penetration and two counts of gross sexual imposition. These are the charges Griffiths faced at trial. According to the state, the reason for the first change was that the prosecutor misclassified the digital penetration as rape, and the reason for the third change is that the victim misconstrued the licking of her breast as oral sex.
At trial, Griffiths testified on his own behalf and denied any inappropriate behavior occurred between himself and the victim. The jury returned verdicts of guilty on the two counts of gross sexual imposition. The jury could not reach a decision on the third count, felonious sexual penetration.
Griffiths' first assignment of error is:
 "The trial court erred, to the detriment of appellant, by failing to allow inspection of the grand jury transcripts."
 Griffiths claims he should have been able to review the grand jury transcripts due to the multiple indictments issued against him. On August 15, 2000, Griffiths filed a motion to allow him access to the grand jury transcripts. The trial court reviewed the transcripts and determined that there were not any inconsistencies in the victim's testimony between the first and second appearance. The trial court denied Griffiths' motion and ordered the records sealed for appellate review.[*]
 [*] The trial court also ordered the medical records of the victim, at issue in Griffith's fourth assignment of error, sealed for appellate review. Both the grand jury transcripts and the medical records were misplaced. They were both subsequently recreated for purposes of appellate review. This court initially only received the medical records and a transcript of the second grand jury appearance, which took place on June 29, 2000. A transcript of the initial session of the grand jury proceedings, which took place on March 22, 2000, was later provided to this court. The March 22, 2000 transcript was signed by the court reporter. The copies of the medical records were not certified as authentic by their custodian. Also the grand jury transcript of the June 29, 2000 hearing was not signed by the court reporter. In light of these facts, these documents were presented to the trial court, which affirmed that they were identical to the originals to the best of its recollection.
Upon reviewing the grand jury transcripts, this court also finds that the testimony of the victim in the second grand jury hearing remained consistent with her testimony in the first grand jury hearing.
The Supreme Court of Ohio has recently addressed the admissibility of grand jury testimony, stating:
 "`[G]rand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for the disclosure exists which outweighs the need for secrecy.' State v. Greer (1981), 66 Ohio St.2d 139, paragraph two of the syllabus. Also, `whether [a] particularized need for disclosure of grand jury testimony is shown is a question of fact ***.' Id., paragraph three of the syllabus. Moreover, whether to release grand jury testimony `is within the discretion of the trial court.' Id., paragraph one of the syllabus. A decision to deny release will not be reversed absent an abuse of discretion. State v. Brown (1988), 38 Ohio St.3d 305, 308." (Parallel citations omitted.) State v. Coley (2001), 93 Ohio St.3d 253, 261.
 There was not a particular need for Griffiths to inspect the grand jury transcripts. There were no inconsistencies in the testimony of the victim. The charges against Griffiths were not changed because the victim testified to two different versions of the events during the grand jury proceedings. After reviewing the transcripts, this court finds the state's reasoning for the changes in the charges brought against Griffiths to be plausible.
The only other apparent need was for the defense to use this testimony to possibly impeach the state's key witness during the trial. This "need" would exist in all criminal cases. This does not outweigh the need for secrecy set forth in Crim.R. 6(E).
The trial court did not abuse its discretion by excluding the defense from viewing the grand jury transcripts. Griffiths' first assignment of error is without merit.
Griffiths' second assignment of error is:
 "The trial court erred to the detriment of appellant by failing to direct a verdict of acquittal."
 Griffiths asserts that the testimony did not substantiate a verdict in this case and, therefore, the trial court erred when it did not direct a verdict of acquittal. In determining whether there was enough evidence presented to overcome a motion for acquittal, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307.
The jury was hung on count one of the indictment, felonious sexual penetration. The state's motion for nolle prosequi on count one was granted by the trial court. Therefore, Griffiths' motion for directed verdict on this count is moot and will not be addressed. See State v.Williams (1996), 74 Ohio St.3d 569, 576.
The two counts, for which Griffiths was convicted, were both gross sexual imposition. Gross sexual imposition is codified in R.C. 2907.05
and states, in relevant part:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
"***
 "(4) the other person *** is less than thirteen years of age, whether or not the offender knows the age of that person."
 When viewed in the light most favorable to the prosecution, there was sufficient evidence for a trier of fact to determine that the victim was not the spouse of the Griffiths and that she was under thirteen at the time of the offense. The only remaining inquiry is whether there was enough evidence to conclude that "sexual contact" occurred between the victim and Griffiths. Sexual contact is defined in R.C. 2907.01(B), as:
 "(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 Griffiths touched the breast, genitals, and pubic region of the victim, according to the direct testimony of the victim. The victim also testified that Griffiths had her give him a "hand job" which resulted in ejaculation.
The only remaining inquiry is whether this touching was for the purpose of sexual gratification. The fact that Griffiths ejaculated is enough evidence for a trier of fact to conclude that when Griffiths caused the victim to touch his genitalia, it was for the purpose of sexual gratification. There was also evidence that Griffiths inserted his finger into the victim's vagina. A touching alone is not sufficient for a conviction, but it can be strong evidence of intent. In re Anderson
(1996), 116 Ohio App.3d 441, 444. A jury may infer from the evidence presented that the motivation for a defendant's actions was sexual arousal or gratification. State v. Cobb (1991), 81 Ohio App.3d 179, 185. When viewing the touching of the victim's vagina and breast in the totality of the circumstances, a trier of fact could have concluded that the purpose of these acts was sexual arousal or gratification.
There was sufficient evidence presented at trial that, if believed, a trier of facts could conclude that Griffiths committed gross sexual imposition. Therefore, it was not error for the court to overrule a motion for acquittal.
Griffiths' second argument in this assignment of error is that a conviction for gross sexual imposition should not stand without corroboration of the victim's testimony. Griffiths argues that since R.C. 2907.06 (sexual imposition, a misdemeanor) requires corroboration of the victim's testimony, R.C. 2907.05 (gross sexual imposition, a felony) should also require corroboration of the victim's testimony.Looking to the plain language of the statute, there is no corroboration requirement in R.C. 2907.05. There are many other crimes, including rape, that do not require corroboration of the victim's testimony. See R.C. 2907.02. In fact, the Supreme Court of Ohio has stated that it is not aware of any other statutory sections that require corroboration of a victim's testimony. State v. Economo (1996), 76 Ohio St.3d 56, 58. We are not prepared to extend the corroboration requirement of R.C. 2907.06 to R.C.2907.05. Accordingly, Griffiths' second assignment of error is overruled.
Griffiths' third assignment of error is:
 "The trial court erred to the detriment of appellant, by failing to restrain appellee's attorney from improper and inflammatory remarks made during the trial."
 Griffiths claims that the state made improper remarks during its closing argument. Counsel is given some latitude during summation. State v. Woodards (1966), 6 Ohio St.2d 14, 26. Prosecutorial misconduct will not be grounds for error unless the defendant is denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266.
The first comment Griffiths objects to is the prosecutor's references to Griffiths' attorney's family, specifically mentioning that the defense attorney has children and has a daughter. The relevant portions of the state's summation are:
 "MS. KOOVAR: (for the state) she told you she did not understand what oral sex meant. It is really nice for Attorney Scala, who has children and who has a daughter, to say.
 "MR. SCALA: Objection. My personal life is irrelevant to this case.
 "MS. KOOVAR: I'll talk about my daughter and my son.
"MR. SCALA: That is irrelevant, too.
"THE COURT: Sustained. The jury will disregard."
 We cannot tell what the state was attempting to accomplish with this dialogue. These remarks were not within the latitude to be given to summation. These remarks constitute prosecutorial misconduct. This was outrageous conduct. The Code of Professional Responsibility states "[a] lawyer should not make unfair or derogatory personal reference to opposing counsel." E.C. 7-37. This was a personalized attack on the defense counsel.
However, even though these comments constituted prosecutorial misconduct, Griffiths was not denied a fair trial because of them. His trial counsel promptly objected. This objection was sustained, and the court gave a curative instruction to the jury to disregard these statements.
The next statement made during summation that Griffiths objects to referred to the acts of perversion. The relevant portion of the state's summation follows:
 "MS. KOOVAR: He would ask this young girl to come into the room, the bedroom and order her to take her clothes off. And then he would start committing these perversion assaults on this young girl."
 The First Appellate District has held that remarks made during summation about the defendant, including: "[h]e's strange. He's sick. He's demented and perverted," were within the wide latitude to be given to summation, and no prosecutorial misconduct occurred. State v. Napier (Dec. 30, 1999), Hamilton App. No. C-980999, unreported, 1999 Ohio App. LEXIS 6328, at *39. Certainly referring to sex crimes committed against a child as "perversion assaults" is within the latitude given to summation.
In addition to the comments made during summation, Griffiths also claims that the prosecutor was leading witnesses throughout the trial. Many of these questions were objected to and sustained. There is no indication that Griffiths was denied a fair trial because of these instances where the prosecutor was leading witnesses.
Griffiths' third assignment of error is also without merit.
Griffiths' final assignment of error is:
 "The trial court erred to the detriment of appellant, by failing to allow discovery and inspection of the witness' hospital records."
 The victim was admitted to hospitals following two suicide attempts. In both of these attempts she overdosed on pills. She claimed that peer pressure and family problems were the reason she attempted to end her life.
Griffiths argues that he should have been allowed to inspect the medical records of these stays. The reason Griffiths requested these medical records was to see if the victim discussed any instances of the sexual abuse at issue in this case during her counseling sessions.
A defendant is allowed to inspect results and reports of mental examinations if they are made in connection with that particular case. Crim.R. 16(B)(1)(d).
These hospital visits occurred after the alleged incidents in this case occurred, but before the trial. The fact that a teenage witness, who is claiming to have been sexually abused at age eleven, is admitted to hospitals on two separate occasions following suicide attempts could certainly be connected to this case. In a letter from the victim's father, which was read in court during the sentencing hearing, the victim's father stated he believed the real reason for the suicide attempts was the sexual abuse at issue in this case.
The defense should have had access to these medical records. However, the fact that they were withheld from the defense was harmless error. Griffiths was able to cross-examine the victim on the witness stand about these instances. She was asked if she told the counselors about the incidents that occurred with Griffiths. She responded that she had not. Through the medium of cross-examination, Griffiths raised the issue that the victim did not mention this sexual abuse when she was admitted to the hospital.
Griffiths' final assignment of error is also overruled.
The judgment of the trial court is affirmed.
PRESIDING JUDGE WILLIAM M. O'NEILL, FORD, J., GRENDELL, J., concur.