JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-Appellant Marlon Stanley (Stanley) appeals from the decision of the jury finding him guilty on one count each of rape, gross sexual imposition, kidnapping and intimidation arguing it was based upon prosecutorial misconduct. Further Stanley appeals from the decision of the judge enhancing his penalty for his conviction in accordance with the repeat violent offender (RVO) specification contained in his indictment. Finally, Stanley asserts the RVO statute is unconstitutional.
 {¶ 2} For the reasons that follow, we affirm in part, reverse in part and remand the case to the trial court.
 {¶ 3} The following facts presented at trial give rise to this appeal. Stanley lived in an apartment building. He broke into the victim's apartment in the same building between 2:00 a.m. and 3:00 a.m. and raped her at knife point. He did so while the victim's eight-month-old son slept in the bed next to her. The victim's other two children were elsewhere in the apartment at the time of the rape.
 {¶ 4} Following the first rape, Stanley forced the victim to attempt to remove semen from her body. He next forced the victim to perform oral sex on him and proceeded to rape her again. Before leaving her apartment, Stanley threatened to kill the victim, her children and family members if she reported the attack. After he left, the victim immediately left her apartment with her children and went to a relative's house and called police.
 {¶ 5} The police arrived at the victim's relative's house to investigate. The victim was transported to the hospital. A rape kit was prepared at the hospital that included semen. The semen was later positively identified by DNA analysis to be Stanley's. Meanwhile, police arrived at the victim's apartment building in search of Stanley. Stanley attempted to escape out the back door of the apartment he shared with his girlfriend. While being arrested, he told officers he "didn't do any of that" and they would need DNA evidence in order to prosecute him. He told them he would not be prosecuted on "he say, she say" statements.
 {¶ 6} Stanley was indicted on four counts of rape, one count of gross sexual imposition, one count of aggravated burglary, one count of kidnapping, one count of intimidation and one count of felonious assault. The indictment included a repeat violent offender specification.
 {¶ 7} At trial, Stanley was convicted by the jury on one count each of rape, gross sexual imposition, kidnapping and intimidation. He was found not guilty of the remaining charges. He was sentenced to five additional years in connection with the repeat violent offender specification.
 {¶ 8} Stanley advances three assignments of error for our review.
 {¶ 9} "I. The imposition of an additional sentence for the repeat violent offender specification was based on insufficient evidence and thus violated state and federal due process."
 {¶ 10} Sentence enhancements under the RVO statute involve a two-step process. R.C. 2929.14(D)(2)(b). First, the judge must determine that the defendant is a repeat violent offender. Id. Following that determination, and prior to the imposition of any sentence enhancement, the judge must then make a finding that (1) there is a great risk of recidivism and (2) the maximum term is demeaning to the seriousness of the offense after weighing the factors making an RVO enhancement proper. R.C. 2929.12.
 {¶ 11} The Revised Code language pertinent to Stanley defines a repeat violent offender as follows: "`Repeat violent offender' means a person about whom both of the following apply: (1) The person has been convicted of * * * a felony of the first degree * * * (2) * * * the following applies: (a) The person previously was convicted of or pleaded guilty to, and previously served * * * a prison term for * * * (i) * * * a felony of the first or second degree that resulted in the death of a person or in physical harm to a person * * *." R.C. 2929.01(EE).
 {¶ 12} In this case, Stanley was convicted of rape, a felony of the first degree. That conviction satisfies R.C. 2929.01(EE)(1) above. As it applies to R.C. 2929.01(EE)(2)(a)(i) above, the parties stipulated Stanley was previously convicted of robbery. However, there was no other evidence provided regarding the events surrounding Stanley's robbery conviction.
 {¶ 13} The Revised Code defines robbery as follows: "* * * (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control; (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; (3) Use or threaten the immediate use of force against another.
 {¶ 14} "(B) Whoever violates this section is guilty of robbery. A violation of division (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree." R.C. 2911.02.
 {¶ 15} Stanley argues that the state "did not come up with any further facts about the robbery to try to show that it was a violent offense." Under the Revised Code definition, a robbery can be committed without "resulting in the death of a person or in physical harm to a person" as required by the RVO statute. R.C. 2929.01(EE)(2)(a)(i). The mere fact of a robbery conviction, therefore, does not establish "a felony of the first or second degree that resulted in the death of a person or in physical harm to a person" as required by the law. R.C.2929.01(EE).
 {¶ 16} The judge did find, however, that "recidivism is likely, as the offender was out on bail before trial or sentencing or post-release control when the offense was committed." The judge also had received an expert report and expert testimony containing considerations of recidivism as part of Stanley's sexual predator hearing. Finally, the court found "the victim sustained physical, psychological and economic harm * * * [and] the shortest prison term will demean the serious of the defendant's conduct and will not adequately protect the public * * *." The second step of the RVO determination was, therefore, satisfied.
 {¶ 17} The state of Ohio concedes that the judge erred in not making the proper inquiry to determine if Stanley's prior robbery "result[ed] in the death of a person or in physical harm to a person" as required by the RVO statute. R.C. 2929.01(EE). We agree. This assignment of error is sustained.
 {¶ 18} "II. The repeat violent offender statute is unconstitutional as it violates an offender's Sixth Amendment right to a jury trial."
 {¶ 19} In this assignment of error, Stanley challenges the constitutionality of the RVO statute contained in R.C. 2929.14. He cites a recent United States Supreme Court opinion as support for his argument, Apprendi v. New Jersey (2000), 530 U.S. 466. In Apprendi, the court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Id. This court has recently addressed this identical argument including its reliance on Apprendi and found the RVO statute constitutional. State ofOhio v. Gates (August 5, 2002), Cuyahoga App. 78120, 2002-Ohio-4018.
 {¶ 20} This court pointed out in Gates that the Apprendi decision permitted the enhancement to a penalty "merely upon the establish[ment] [of] the prior conviction." Id. at ¶ 24. In contrast, "the imposition of the enhanced penalty [in Ohio's RVO statute] is dependent upon the further findings * * * [that] there is a greater likelihood of recidivism and * * * the crime is so serious that basic prison time will not adequately punish the offense." Id. Apprendi permits state legislatures to empower judges to enhance offender penalties merely upon the establishment of a prior conviction. In contrast to that latitude permitted by Apprendi, Ohio's RVO statute is more protective of Stanley's rights and, therefore, constitutional. Finally, Stanley's argument is indistinguishable from the argument made by the defendant in Gates; therefore, as in Gates, this assignment of error is overruled.
 {¶ 21} "III. The defendant was denied his constitutional right to a fair trial because of prosecutorial misconduct during the trial and at closing argument that unfairly prejudiced the defendant."
 {¶ 22} The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966),6 Ohio St.2d 14. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v.United States (1935), 295 U.S. 78. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. State v. Potter (March 20, 2003), Cuyahoga App. 81037. The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Id.
 {¶ 23} In this assignment of error, Stanley cites several comments made by the prosecutor during closing argument that he argues were prosecutorial misconduct unfairly prejudicing his right to a fair trial.
 {¶ 24} The first set of comments made during closing argument involve the prosecutor labeling Stanley as a "liar" or stating that he is "lying." The transcript contains the following: (1) "And if he's lying to you about that, is he lying to you about the rest?"; (2) "Yeah, he came in here and lied * * *."; (3) "That is a lie. He's lying."; (4) "He was lying here."; and (5) "* * * [H]e's just going to lie, lie, lie, and if the first set of lies aren't good enough, we will get a second set of lies."
 {¶ 25} Generally referring to or alluding to a defendant as a liar is improper, in that it conveys the prosecutor's personal belief. Statev. Clemons (1998), 82 Ohio St.3d 438. However, the prosecutor's characterization that a defendant is a liar or is lying is proper if based upon the evidence at trial. State v. Tyler (1990), 50 Ohio St.3d 24.
 {¶ 26} In this case, Stanley testified in his own defense. During that testimony he admitted lying to the police at the time of his arrest by claiming to be his deceased brother in an attempt to avoid prosecution. He testified that the victim lied in her statement to police and in her testimony identifying Stanley as the person who raped her. He repeatedly claimed that a series of pre-trial statements attributed to him by an investigating detective were inaccurate or were "mistakes" inserted into the police report by that detective.
 {¶ 27} The prosecutor's comments regarding Stanley here are in direct reference to the evidence in the case. The case centered on the victim's word against Stanley's. Stanley's admission that he lied to police reasonably led to the comments by the prosecutor in closing argument. The prosecutor's characterization of Stanley's whole testimony as a lie was not improper based on Stanley's admission that he lied to police. In addition, Stanley encouraged a thorough analysis of his truthfulness by claiming the victim was lying about the entire rape.
 {¶ 28} Stanley next cites comments made by the prosecutor during closing argument regarding a defense witness, Glenda Clark. Clark was Stanley's girlfriend at the time of the rape and was his alibi witness for the night of the rape. During closing argument, the prosecutor stated "If she lied to you about that, what else was she lying to you about?" and "That one, ladies and gentlemen, that one should get an award because that is impressive. I mean, that is creative lying like you have never seen."
 {¶ 29} These comments by the prosecutor refer to Clark's testimony about the night Stanley was arrested. She was present in the apartment where Stanley was found and arrested. During the arrest, she refused to permit the police entry to the apartment and was charged with obstruction of justice as a result. While Stanley was being arrested, she was involved in an altercation with an arresting officer. During that altercation, the officer testified, she spit on him. She was convicted of assault for that spitting. Clark claimed that she accidentally spit on the officer as she was attempting to spit out a tooth that had been dislodged during the altercation. She provided this tooth-spitting explanation for the first time at Stanley's trial.
 {¶ 30} In addition, Clark testified that the victim lied about the rape. Clark testified that "[Stanley] couldn't have raped her." She also testified "I think [the victim is] making everything up." Clark bolstered her claim that the victim was lying by testifying she saw another man, not Stanley, enter the victim's residence about 1:00 a.m. the morning of the rape.
 {¶ 31} The prosecutor's comments here are a direct response to the evidence. Clark claimed the arresting officer lied about her assault on him to obtain a conviction. The officer recounted the incident as intentional, while Clark claimed it was accidental. Clark's testimony was offered as an alibi for Stanley as to his location at the time of the crime, i.e., with Clark in her apartment while the victim was being raped by someone else. As such, Clark's credibility was an important issue for the trial. Her challenge to the credibility of the arresting officer and the victim led to the prosecutor's challenge to her credibility during closing argument.
 {¶ 32} Stanley cites the following comments made by the prosecutor regarding Stanley's past criminal record. "Well, [the victim] is a little bit smarter than this ex-con sitting here * * *." "Do you think [the victim's] purpose in life is to worry about this con?"
 {¶ 33} "Now, she didn't fight a convict with a knife * * *." "* * * this con who just got out of the joint." "[The detective] catches criminals. This is a criminal."
 {¶ 34} Webster's Dictionary defines the word "criminal" as "1. one who has committed a crime or 2. a person who has been convicted of a crime." Webster's Dictionary Online, http://www.m-w.com.
 {¶ 35} Stanley testified in his own defense. As such, his credibility was at issue. Moreover, he made the victim's credibility an issue as well by testifying that she lied by fabricating the entire rape story out of vengeance. Stanley's prior criminal record was proper subject matter for cross-examination and proper evidence for jury consideration. The prosecutor's comments regarding Stanley being a "con" or "ex-con" are common slang terms that merely remind the jury of the evidence: Stanley has a criminal record including time spent in jail.
 {¶ 36} Stanley next cites comments made by the prosecutor regarding Clark and her testimony.
 {¶ 37} The prosecutor referred to Clark as Stanley's "drunken girlfriend" and told the jury that Clark "is a convicted felon and you can take that into account in judging her credibility." These comments were immediately followed by the prosecutor's recitation of Clark's conflicting testimony: "She goes to AA, but she's not an alcoholic. She smokes marijuana, but it's for therapeutic purposes. She drives a car, but she's got a suspended license. The license is suspended for DUI. She's innocent, but she was convicted of spitting in the police officer's face. She is homeless, but she lives with her daughter."
 {¶ 38} Clark admitted that on the night of the rape she was drunk.
 {¶ 39} "Q. [Prosecutor]: All right. But I thought you were drunk.
 {¶ 40} "A. [Clark]: Yeah, it didn't stop me from knowing what was going on though."
 {¶ 41} Although not necessarily a description used in polite conversation, the term "drunken girlfriend" here does not rise to the level of being improper. Clark admitted she was drunk the night of the rape. She is the girlfriend of Stanley and offered an alibi for him. This comment is in keeping with the prosecutor's wide latitude to strike "hard blows, but not foul ones." Berger, supra. This is clearly a hard blow, but under the circumstances, not an improper one. As with Stanley's credibility, it is also proper for the prosecutor to remind the jury of Clark's prior criminal record. The jury is entitled to consider that record in weighing her credibility.
 {¶ 42} Stanley next cites comments by the prosecutor "denigrating the theory of Mr. Stanley's innocence," including the following: "* * * whatever nonsense the defense wants to throw in front of you * * *"; "And don't listen to this nonsense that Mr. Greene puts before you"; "* * * [A]nd they come up with nonsense."
 {¶ 43} All these comments by the prosecutor were made in the midst of recitations of the testimony provided by prosecution witnesses and the response by defense witnesses to that testimony. The prosecutor is clearly comparing the state's evidence with the defense evidence and communicating to the jury what he believes to be the logical flaws of the defense evidence.
 {¶ 44} Stanley next cites prosecution comments that he claims were expressions by the prosecutor of his personal opinion as to Mr. Stanley's guilt. "[The state's witnesses] all know what happened to [the victim] and now you do to(sic)." "* * * [I]t's true, this happened, this guy raped a woman in her bed with her baby lying next to her, and then he has the gall, the audacity to add insult to injury, come in here and call her a liar." "This guy raped a woman with a baby in her bed, and he expects you to let him walk out of here."
 {¶ 45} The first of these comments is clearly proper as it is prefaced by the testimony and belief of the state's witnesses. Their testimony is evidence in the case and the prosecutor is within his right to refer to it in closing argument. The next two comments appear on the same page of the transcript. Preceding those comments on that same page is the following statement by the prosecutor: "But then you look at the evidence, you add up every piece, put piece on top of piece on top of piece, and yeah, it's true, this happened * * *."
 {¶ 46} In context, it is clear these comments are not expressions of personal opinion by the prosecutor but comments upon the evidence presented as they are preceded by an urging of the prosecutor to the jury to "look at the evidence."
 {¶ 47} Stanley next cites to closing argument comments during which he claims the prosecutor "unprofessionally and improperly" spoke directly to Stanley. The record is silent as to what direction the prosecutor was looking while making these comments. There is no evidence the prosecutor spoke directly to Stanley. The comments Stanley cites as improper here are as follows: "There Marlon, just like you asked for." "Well, guess what, we have medical evidence and DNA to prosecute you."
 {¶ 48} The state presented testimony from a detective who recounted that upon arrest, Stanley told him, "[the state of Ohio] would need medical finding and DNA to prosecute [me]." These closing argument comments by the prosecutor were a direct response to the evidence presented at trial regarding Stanley's DNA comment which was introduced through the detective's testimony.
 {¶ 49} Stanley last cites to closing argument comments by the prosecutor that he claims appealed to the jury's emotions.
 {¶ 50} "* * * I know when I first read the police reports, and I'm thinking about it, and it's, this guy raped a woman in her bed with an eight month old baby lying next to her, and at first you almost can't believe it. It's the 21st century, and human beings are treating each other this way." "Do what your duty is, and that duty is a verdict of guilty."
 {¶ 51} The core of the defense in this case was an accusation that the victim was lying. Stanley's defense urges the jury to accept his claim that the rape did not happen at all. The prosecutor's comments here respond to the possibility that the jury may be persuaded by the defense to ignore the victim's account of the horrific abuse suffered at the hands of Stanley as too horrible to be believed.
 {¶ 52} At the close of Stanley's closing argument, defense counsel directly asks the jury for a verdict "of not guilty on all the counts * * *." At the conclusion of the prosecutor's closing argument, he finishes reciting the evidence in the case by saying "* * * this is proof beyond a reasonable doubt." The comment regarding the jury's duty is appropriate as it follows the prosecutor's argument that the proof he just finished reciting is sufficient to meet the state's burden. It is a proper statement for the prosecutor to instruct the jury that if they are persuaded by the prosecutor's argument, their "duty is a verdict of guilty." Likewise, if the jurors determine the evidence was not sufficient to meet the state's burden, their duty is a verdict of not guilty. This is a proper statement of the duty jurors swore to fulfill upon becoming jurors in this case.
 {¶ 53} None of the prosecutor's comments in closing argument were improper. We further determine the prosecutor's comments did not unfairly prejudice Stanley's right to a fair trial. State v. Potter, supra.
Judgment affirmed in part, reversed in part and remanded to the trial court to make the proper inquiry and findings to determine if Stanley's prior robbery conviction "result[ed] in the death of a person or in physical harm to a person" as required by the RVO statute and resentence Stanley in accordance with that finding.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., concur.