OPINION
{¶ 1} Defendant-appellant, Quan L. Tatum ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, whereby a jury convicted him of aggravated murder with a firearm specification, attempted aggravated murder, kidnapping with a firearm specification, aggravated burglary with a firearm specification, and aggravated robbery with a firearm specification. For the reasons that follow, we affirm.
 {¶ 2} The charges against appellant arose from two homicides that occurred on May 29, 2003, in Columbus, Ohio. On that day, two gunmen forced their way into the residence of Habu Westbrook, a known drug dealer. Also at the residence at that time were 24-year-old Amie Wright and one-month-old Alamar Wright, the infant son of Westbrook and Amie. In the course of a robbery, one of the gunmen shot and killed Westbrook. The other shot Amie while she held Alamar in her arms. Amie was seriously wounded, but ultimately recovered. Alamar died at the scene.
 {¶ 3} The case was tried to a jury. At the trial, appellant did not dispute that the murders, or the attempted murder of Amie, occurred, nor that the murders were part of a robbery, but appellant denied that he was involved. The state called numerous witnesses, two of whom identified appellant as one of the two gunmen. The defense rested without calling any witnesses.
 {¶ 4} The jury convicted appellant, and the court sentenced appellant to multiple life sentences, including a life sentence without the possibility of parole. Appellant appeals from that conviction.
 {¶ 5} Appellant raises a single assignment of error:
Whether or not the trial court erred to the prejudice of the appellant by admitting two gruesome crime scene photographs (state exhibits p56 and p57) that were irrelevant and denied appellant his right to a fair trial [under] the state and federal constitutions.
 {¶ 6} Appellant argues that it was error for the trial court to admit two photos of the infant victim, Alamar. Appellant acknowledges, however, that only one of the photos (Exh. P57) is particularly graphic, as it offers a close-up view of the infant's injury to the left side of his face. The second photo (Exh. P56) shows the infant lying on a bed and offers a view from a greater distance. There is no question that these images are gruesome, nor that a person of ordinary conscience would find it difficult to look at them.
 {¶ 7} Evid.R. 403 provides:
(A) Exclusion mandatory
Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
(B) Exclusion discretionary
Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.
 {¶ 8} Thus, under Evid.R. 403, the admission of photographs is left to the sound discretion of the trial court. State v. Maurer (1984),15 Ohio St.3d 239, 264, certiorari denied (1985), 472 U.S. 1012. "Nonrepetitive photographs in capital cases, even if gruesome, are admissible if the probative value of each photograph outweighs the danger of material prejudice to the accused." State v. Jalowiec (2001),91 Ohio St.3d 220, 229 (affirming the admission of 17 crime scene photos and 27 autopsy photos).
 {¶ 9} In Maurer, at 264-265, where the court affirmed the admission of five photographs, the court stated:
* * * To be certain, a trial court may reject a photograph, otherwise admissible, due to its inflammatory nature if on balance the prejudice outweighs the relevant probative value. However, the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible. State v. Woodards (1966), 6 Ohio St.2d 14, 25 * * *. "The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere."State v. Hymore (1967), 9 Ohio St.2d 122, 128 * * *.
 {¶ 10} In State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, at ¶52, where the court affirmed the admission of nine autopsy photographs, the Ohio Supreme Court articulated their useful purpose:
* * * The photographs serve purposes that we have time and again found sufficiently probative to overcome their inherently disturbing nature. They helped the jury appreciate the nature of the crimes, they illustrated the coroner's testimony, and, by portraying the wounds, they helped to prove [the defendant's] intent and the lack of accident or mistake. * * *
 {¶ 11} Here, appellant argues that admission of the photos, particularly Exh. P57, served no evidentiary purpose because the defense stipulated to the infant's identity and cause of death, and stipulated that the murder occurred during the course of a robbery. The only question for the jury, appellant argues, was whether appellant was one of the two individuals who committed the murder. The state responds, as it did before the trial court, that it still had the ultimate burden of proof on each element of the crimes — crimes the photographs helped prove. As to these arguments, the Ohio Supreme Court has held that the "fact that appellant stipulated the cause of death does not automatically render the photographs inadmissible." Maurer, at 265. Rather, even where there are stipulations, Evid.R. 403 requires a balancing analysis to determine their probative value. We turn to that analysis now.
 {¶ 12} First, the photos corroborated and illustrated the testimony of the responding officer, Sergeant Hammer. He testified as to what he saw when he arrived at the crime scene, including the location and condition of the infant. The prosecution asked him to identify Exh. P56 and he replied: "It's — the baby was shot." (Tr. at 373, Vol. II.) The prosecutor asked: "Is that the location where you found that baby that morning?" and he replied, "Yes." (Tr. at 373, Vol. II.)
 {¶ 13} Likewise, the photographs aided the prosecution in addressing defense counsel's attacks on Sergeant Hammer's credibility and thoroughness as a responding officer. Although Sergeant Hammer testified on direct examination that the infant was moving when he arrived to investigate, defense counsel elicited Sergeant Hammer's admission that his report made no such indications. Despite his failure to include the information in his report, Sergeant Hammer verified on re-direct that he was not lying when he testified that the infant's arms and legs were moving when he arrived. Sergeant Hammer also addressed concerns about his diligence as a responding officer, noting at length that the incident involving the infant impacted him and that he had even "left patrol since then partially because of this." (Tr. at 380, Vol. II.) Thus, the photographs depicting the infant's injuries were relevant to this discussion and probative of Sergeant Hammer's credibility as a witness and thoroughness as a responding officer.
 {¶ 14} Second, the photos corroborated and illustrated the testimony of the infant's mother, Amie Wright. At numerous points in her testimony, including her testimony on direct and cross-examination, she referred to the infant's location. In particular, as to whether the gunman saw Alamar in her arms, she replied: "There is no doubt in my mind he saw my son." (Tr. at 530, Vol. III.)
 {¶ 15} And third, the photos corroborated and illustrated the testimony of Dr. Robert Belding, the forensic pathologist who performed the autopsy of Alamar while employed by the coroner's office. He testified as to the location, extent, and cause of the wounds Alamar sustained. The prosecution did not admit autopsy photos of the infant.
 {¶ 16} To be sure, even if admissible, the state may not use gruesome photographs "to appeal to the jurors' emotions and to prejudice them against the [defendant]." State v. Thompson (1987), 33 Ohio St.3d 1, 15, quoted in State v. Keenan (1993), 66 Ohio St.3d 402, 407. There can be no such finding here. In all, the prosecution introduced 80 photos (Exh. P1 through P80) taken at the crime scene and seven aerial photos (Exh. P104 through P111) taken from a helicopter. Defense counsel objected to only two of the 87 photos, Exh. P56 and P57. As to those two photos, the following exchange occurred before the jury:
[Prosecutor] Q P56?
[Detective Mead] A That's the baby.
Q Is this the location — is the location of the baby and the position of its body how it was when you got there?
A Yes, sir, it was.
Q P57?
A That's a facial identification of the baby.
(Tr. at 404, Vol. II.)
 {¶ 17} Thus, the prosecution presented the photos in a straightforward way and did not belabor the extent of Alamar's wounds. Nor did prosecutors call special attention to the photos. Cf. Keenan at 408 (where "the role of the photographs was not evidentiary; it was visceral"). Rather, prosecutors used the photos at the trial to corroborate and illustrate the testimony of the witnesses and to carry the state's ultimate burden of proof that appellant was guilty beyond a reasonable doubt. Under these circumstances, we cannot say that the trial court abused its discretion.
 {¶ 18} For these reasons, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Lazarus, J., concur.