DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the judgment of the Erie County Court of Common Pleas which sentenced appellant, Kevin Ball, following his conviction. Appellant filed a timely appeal and asserts the following assignments of error:
 {¶ 2} "I. The trial court erred in failing to conduct a hearing on appellant's motion for new trial based on witness misconduct, pursuant to Rule 33(A)(2).
 {¶ 3} "II. Appellant was denied a fair trial, due to both witness misconduct and prosecution misconduct during closing arguments.
 {¶ 4} "III. The jury verdict was against the manifest weight of the evidence and sufficiency of the evidence.
 {¶ 5} "IV. The record does not support the trial court's classification of defendant/appellant as a sexual predator pursuant to R.C. 2950.09.
 {¶ 6} "V.A. The trial court abused its discretion when it sentenced defendant/appellant to the maximum terms of incarceration.
 {¶ 7} "B. The trial court abused its discretion when it sentenced defendant/appellant to maximum consecutive terms."
 {¶ 8} The relevant facts of this case are as follows. Appellant was indicted on three counts of rape in violation of R.C. 2907.02(A)(2), one count of kidnapping in violation of R.C. 2905.01(A)(4), and one count of intimidation in violation of R.C. 2921.04(B). Appellant pled not guilty to all counts and a trial date was set.
 {¶ 9} At trial, the 18 year old white female victim testified that on September 8, 2001, at approximately 9:30 p.m., she and three friends arrived at a house party in Erie County, Ohio. The victim testified that she left the house around 11:00 p.m. to retrieve her car and returned shortly thereafter. She testified that while at the party she consumed two or three beers and took a "hit" from a pipe of marijuana, but was not intoxicated. Additional witness testimony at trial confirmed that she was not intoxicated. The victim testified that she encountered appellant when she went to her car to charge her cell phone battery which was low. Appellant asked her if she wanted to get something to eat with him in the city of Vermilion, Ohio. At first she was reluctant to go, but soon appellant convinced her to accompany him in his car.
 {¶ 10} The victim testified that instead of going to Vermilion, appellant turned onto a dirt road and slowly drove down it. He drove the car off the road into a small ditch. He attempted to remove the car from the ditch but was unsuccessful. The victim told appellant that she wanted to return to the party immediately. Appellant assured her they would return soon and everything would be fine. He then explained to her that his door was stuck, so they would both have to exit the car through the passenger side door.
 {¶ 11} The victim testified that appellant attacked her while she was exiting the car. He repeatedly struck her on the side of her head, face, nose, and jaw. Appellant then pushed her to the ground and ripped off her pants and underwear. While appellant was removing his clothing, the victim ran back to the car and attempted to lock herself in. Appellant reached the car in time to stop her from locking the car door. The victim also testified that she then complied with appellant's orders because he threatened to slit her throat or stab her with a knife if she did not comply.
 {¶ 12} Appellant forced the victim to perform oral sex on him while she was in the passenger seat of the car. He then pushed her to the ground and performed oral sex on her. The victim became aware that appellant was going to penetrate her vaginally, so she asked him to use a condom she had in her purse. She was not sure if, in fact, appellant used the condom during intercourse. Throughout the incident, the victim told appellant she just wanted to go back to the party and repeatedly asked him to stop.
 {¶ 13} The victim testified that when the ordeal was over, both parties put their clothes back on. Before the victim could find her shoes, appellant grabbed her arm and started walking back to the party. She testified that appellant was concerned he would return to jail if it became known what he did to her. She also testified that she was scared of appellant because of the rape and the way he was acting. For these reasons, she repeatedly assured him that she would not tell anyone. Appellant allowed her to leave on the condition that she walk through the woods because he did not want the sheriff to see her walking along the road. He mentioned some cocaine he needed to pick up and then left in the opposite direction. The victim went through the woods and along some railroad tracks until she reached the back yard of the house where the party was being held.
 {¶ 14} One of the victim's friends testified that she saw the victim returning to the party from a path behind the house. The crotch area of the victim's pants had been ripped out and she was not wearing shoes. She was crying hysterically and her face was red and swollen. When asked what happened to her face, she explained that appellant had hit and raped her. At first, the victim did not want to report the crime. She was scared and wanted to tell people that she had been in a fight. After an hour, the victim's three friends convinced her to go to the police station and report the rape.
 {¶ 15} Deputy Hippley of the Erie County Sheriff's Office (ECSO) testified that he received a call at approximately 2:45 a.m. informing him of an assault. He immediately went to the Vermilion police station where he observed that the victim's clothes were torn and she had facial injuries. Deputy Hippley sent her to the Sexual Assault Care Unit of the Nord Center at Community Health Partners in Lorain, Ohio, to have a rape kit completed.
 {¶ 16} Melanie Fundak, a Sexual Assault Nurse Examiner at the Nord Center, testified that she performed the rape kit examination. Nurse Fundak testified that there was redness and puffiness on the victim's nose, left cheek, and a bruise in the hairline above the right ear. There were superficial scratches on her arms and upper legs. There was also bruising in the vaginal area indicative of blunt force trauma. Bits of grit, sand, or dirt were also found in the genital area.
 {¶ 17} Detective Lippert from the ECSO testified that he spoke with the victim at the Nord Center. Detective Lippert testified that when he saw her she looked like she had been crying, was visibly upset, and speaking quietly. Detective Lippert testified that the victim did not appear to be under the influence of alcohol or drugs. He noticed her nose was red and starting to swell, bruising was starting to form around the eye, and the side of her face was starting to puff up. The victim returned to Community Health Partners the next day because she was experiencing pain and discomfort. Detective Lippert sent Deputy McLaughlin there to take pictures of her. The bruising was more pronounced. Detective Lippert testified that this type of bruising was consistent with physical assaults.
 {¶ 18} At the crime scene, detectives found a condom wrapper, a pair of sandals, a pack of cigarettes, and appellant's car. The vehicle, a 1990 Ford Mustang, was taken to ESCO for examination. No condom or bodily fluids were found in the car. The victim positively identified appellant's photograph as the person who had raped her.
 {¶ 19} Captain Sigswoth testified that as a result of the investigation he obtained an arrest warrant for appellant. Appellant signed a waiver of rights form and voluntarily spoke with Detective Lippert. Appellant initially stated that he had no contact with the victim on the night in question, but later admitted having seen her sitting in her car. Appellant said he had driven his Ford Mustang to the party that night with three friends but could not provide any of their last names for identification.
 {¶ 20} Appellant admitted that while at the party he had consumed alcohol, smoked marijuana, and had taken a pill he believed to be Oxycontin. Appellant denied having sex with the victim or anyone else that night. He also denied having any contact whatsoever with the victim at the party. Detective Lippert took photographs of appellant that showed multiple scratches on his arm.
 {¶ 21} At trial, appellant testified that he had consensual sex with the victim in the front passenger seat of his car. Appellant testified that he had worn a condom and had thrown it on the front floor of the car. He did not remember telling Detective Lippert that he had no contact with the victim.
 {¶ 22} Stacey Shipman, a forensic scientist of the Bureau of Criminal Investigation ("BCI"), testified that she analyzed the rape kit. Semen was identified on the victim's vaginal and rectal swabs and underwear. Julie Cox, a forensic scientist for BCI, testified that appellant's DNA profile was on the swabs and that only one person in 110 quadrillion would have appellant's DNA profile. Cox's professional opinion was that appellant's semen was on the swabs.
 {¶ 23} During closing argument, the victim started to cry as appellant's counsel questioned her version of the facts. As she attempted to leave the courtroom, a conversation occurred between defense counsel and the victim's father. A tape recording of the conversation proceeds as follows:
 {¶ 24} Defense counsel: "That's understandable."
 {¶ 25} Participant: "Yeah."
 {¶ 26} Defense counsel: "It really is."
 {¶ 27} Participant: "Yeah, sure is."
 {¶ 28} Defense counsel: "Absolutely."
 {¶ 29} Participant: (Inaudible.)
 {¶ 30} The Court: "Just one moment, counsel. Keep your conversation to the back, not to the people sitting in the (inaudible)."
 {¶ 31} Defense counsel: "I'd like the record to show."
 {¶ 32} The Court: "Just —"
 {¶ 33} Defense Counsel: "— what's going on here?"
 {¶ 34} The Court: (Inaudible.)
 {¶ 35} Defense Counsel: "You, the jurors * * *"
 {¶ 36} The case was submitted to the jury which found appellant guilty of all five counts. The kidnapping count was merged with the three rape counts. Appellant was given the maximum sentence for each rape count and the intimidation count. The sentences for all four counts were to be served consecutively for a total term of 35 years imprisonment.
 {¶ 37} In his first assignment of error, appellant asserts that the trial court erred in failing to conduct a hearing on his motion for new trial pursuant to Crim.R. 33(A)(2). The decision on whether to hold a hearing on a motion for new trial is within the trial court's discretion. State v. Smith (1986), 30 Ohio App.3d 138, 139. Further, it is well settled that "[n]either the trial court's ruling on the new trial motion nor its decision on whether to hold a hearing thereon, will be disturbed on appeal in the absence of a clear showing that the court abused its discretion." Toledo v. Stuart (1983), 11 Ohio App.3d 292, paragraph two of the syllabus. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 38} The incident that gave rise to appellant's first assignment of error was the alleged disturbance during appellant's closing argument as described above. A trial court is in the best position to gauge the effect on the jury and to make any remedy it deems necessary. After a review of the record and an audio tape of the events during defense counsel's closing argument, we conclude that appellant has failed to show that the trial court was unreasonable, arbitrary, or unconscionable in not holding a hearing on his motion for a new trial.
 {¶ 39} Appellant also asserts that he was unfairly prejudiced because the trial court did not give a specific limiting instruction to the jury concerning the disturbance. However, at trial, appellant failed to request an instruction or to object to the lack of an instruction and, therefore, waived any claim related thereto, unless, but for the error, the outcome at trial clearly would have been different. State v.Underwood (1983), 3 Ohio St.3d 12, syllabus. The general rule is that an appellate court will consider only such errors preserved in the trial court. State v. Craft (1977), 52 Ohio App.2d 1, 2. Plain error is an exception to the general rule. Accordingly, we must analyze this assignment of error under the plain error standard.
 {¶ 40} "A `plain error,' * * * is an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings." Craft, at paragraph one of the syllabus. Notice of plain error is only to be taken under exceptional circumstances and only to correct a manifest miscarriage of justice. State v. Landrum (1990),53 Ohio St.3d 107, 111.
 {¶ 41} After a review of the record, we find that the events in this case do not rise to the level of plain error. Again, the trial court is in the best position to determine the effect of any alleged disturbance on the jury and to determine the necessary remedy. In this case, the trial court determined that a specific instruction was not necessary. Moreover, the court did issue an instruction which we find was sufficient in instructing the jurors of their responsibilities.[1] Neither argument in this assignment of error has merit. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 42} In his second assignment of error, appellant asserts he was denied a fair trial based on witness and prosecutorial misconduct during the closing arguments. The basis for the assertion of witness misconduct was the disturbance during appellant's closing argument as set forth above. The basis for the accusation of prosecutorial misconduct was the prosecutor's closing argument in which he asked the jury on three occasions not to re-victimize the victim. Appellant admits that, by themselves, the prosecutor's statements ordinarily would not constitute reversible error, but asks this court to consider the prosecutor's actions together with the disturbance to reach the threshold of reversible error.
 {¶ 43} Appellant's counsel failed to object to the prosecutor's closing argument statements and failed to request a curative instruction for the disturbance. As noted above, the general rule is that an appellate court will consider only errors preserved in the trial court. Thus, we must analyze this assignment of error under the plain error standard as set forth above.
 {¶ 44} The test regarding prosecutorial misconduct during closing argument is "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v.Lott (1990), 51 Ohio St.3d 160, 165. By themselves, the prosecutor's statements are not improper. Prosecutors must be allowed some "latitude and freedom of expression" in their closing arguments. State v. Woodards
(1966), 6 Ohio St.2d 14, 26. Therefore, we find that the prosecutor's statements were not prejudicial and did not affect the substantial rights of appellant. Additionally, we held above that appellant failed to prove that the disturbance was prejudicial to him. We disagree with appellant's assertion that the prosecutor's statements taken together with the alleged witness misconduct constitute cumulative error. The Supreme Court of Ohio has recognized the doctrine of cumulative error when numerous "harmless errors" are combined. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. In order for the doctrine of cumulative error to be applicable, however, an appellate court must find that multiple errors, none of which individually rise to the level of prejudicial error, actually occurred in the trial court. State v.Madrigal (2000), 87 Ohio St.3d 378, 398. The doctrine of cumulative error is inapplicable where there are not multiple instances of harmless error. State v. Leach, 150 Ohio App.3d 567, 2002-Ohio-6654 at ¶ 57. In this case, no errors have been found and, thus, there can be no cumulative error. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 45} In his third assignment of error, appellant argues that the jury verdict pertaining to the intimidation count was contrary to the manifest weight and sufficiency of the evidence. R.C. 2921.04(B) sets forth the relevant elements of intimidation: "[n]o person knowingly, and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges * * *." A person acts knowingly when "* * * he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901(A)(1).
 {¶ 46} The standard for determining whether the evidence submitted at trial is sufficient to support a conviction is whether that evidence, if believed, would convince the average person that the defendant was guilty beyond a reasonable doubt. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. Therefore, appellant's verdict will not be set aside unless we find that reasonable minds could not reach the conclusion reached by the jury. State v. Alexander, 6th Dist. No. WD-02-047, 2003-Ohio-6969 at ¶ 56-57.
 {¶ 47} In this case, we find that there was sufficient evidence to support appellant's conviction on the intimidation count. The victim testified that appellant repeatedly threatened to stab her or slit her throat. She testified that appellant was concerned that she would report the rape. She was scared and repeatedly promised him that she would not report the rape because she was afraid of what he might do to her. Once satisfied that she would not turn him in, he made her return to the party through the woods so the police would not see her. Her friends testified that when she returned to the party, it took them almost an hour to convince her to report the crime. Consequently, viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have determined that appellant was guilty of intimidation.
 {¶ 48} However, even if an appellate court determines that the judgment of a trial court is sustained by sufficient evidence, it can nevertheless find that the judgment was against the manifest weight of the evidence. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. When determining if the judgment is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. While the appellate court can consider the credibility of witnesses, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 49} There is no evidence in the record to suggest the jury lost its way or that a manifest miscarriage of justice occurred. In this case, it is clear that appellant used intimidation to prevent the victim from reporting the crime. As noted above, appellant threatened the victim. He only allowed her to leave when she promised that she would not tell anyone and forced her to return to the party through the woods. She was clearly scared of appellant and what he would do if she told anyone what happened. After a review of the record, we find that the intimidation conviction was not against the manifest weight of the evidence.
 {¶ 50} Therefore, we find that the jury verdict was not against the sufficiency or the manifest weight of the evidence. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 51} In his fourth assignment of error, appellant asserts that the record does not support the court's classification of appellant as a sexual predator pursuant to R.C. 2950.09. A "sexual predator" is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E)(1). After holding a hearing and reviewing the evidence and testimony therefrom, the judge shall determine by clear and convincing evidence whether the person is a sexual predator. R.C. 2950.09(B)(4). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 52} In making a sexual predator determination, a trial court must consider the guidelines set out in R.C. 2950.09(B)(3).[2] However, the court has the discretion to determine what weight, if any, to assign to each guideline. State v. Thompson (2001), 92 Ohio St.3d 584, paragraph one of the syllabus. A trial court may consider any other evidence it deems relevant to determine the likelihood of recidivism. Id. Additionally, the Ohio Supreme Court has held that a conviction of a single sexually oriented offense can support a sexual predator adjudication and it is only necessary for the trial court to consider those factors relevant to its determination. State v. Eppinger (2001),91 Ohio St.3d 158, 167.
 {¶ 53} At the hearing, the trial court found that: (1) appellant had an extensive criminal background and was on parole at the time of the rape; (2) there was a large age disparity between appellant (33) and the victim (18); (3) there was evidence of cruelty in committing the offense; (4) appellant continued to display indifference to the victim; and (5) he categorically rejected culpability.
 {¶ 54} After a through review of the record and the trial court's findings, we find the trial court had sufficient clear and convincing evidence to support a sexual predator determination. Accordingly, appellant's fourth assignment of error is found not well-taken.
 {¶ 55} In his fifth assignment of error, appellant asserts that the trial court abused its discretion when it sentenced him to maximum terms of incarceration to be served consecutively. Appellant argues that the record shows the trial court did not follow the statutory guidelines in sentencing appellant to these terms of imprisonment.
 {¶ 56} An appellate court's duty in reviewing a sentencing issue is to (1) "review the propriety of the trial court's sentencing decisions, including whether the findings that support a sentence are themselves supported in the record," and (2) "substitute our judgment for the trial court's only upon clear and convincing evidence of one of the four errors described by R.C. 2953.08(G)." State v. Martin (1999), 136 Ohio App.3d 355,361.
 {¶ 57} We will first discuss appellant's assertion that the trial court abused its discretion in sentencing appellant to consecutive sentences. Generally, in Ohio, a person's prison terms must run concurrently with any term of imprisonment in "this state, another state, or the United States." R.C. 2929.41(A). However, pursuant to R.C.2929.14(E)(4), a trial court can impose consecutive prison terms if it finds that: (1) consecutive sentences are necessary to protect the public from future crimes or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the three factors set forth in R.C. 2929.14(E)(4) (a-c) applies to the defendant.[3] When reviewing the imposition of consecutive sentences, an appellate court determines if the trial court made the statutorily enumerated findings and gave reasons supporting those findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165 at ¶ 20.
 {¶ 58} In entering its judgment, the trial court clearly followed the R.C. 2929.14 (E)(4) tripartite procedure. First, the trial court found on the record that consecutive sentences were necessary to protect the public from future crime and to punish appellant. Second, the trial court held that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger appellant posed to the public. And third, the court found that not one, but all three enumerated sub-parts in R.C. 2929.14 (E)(4) (a-c) were present.
 {¶ 59} Pursuant to R.C. 2929.14(E)(4) (a-c), the trial court found that (1) appellant was under post-release control for a prior offense when he committed the instant offense; (2) the harm caused by the multiple offenses was so great or unusual that no single prison term for the offenses would adequately reflect the seriousness of appellant's conduct; and (3) appellant's criminal history demonstrated that consecutive sentences were necessary to protect the public from future crimes by appellant. Therefore, we conclude that the trial court made the required findings on the record before imposing consecutive sentences and the record supports the trial court's imposition of consecutive sentences.
 {¶ 60} In regard to appellant's argument relating to the imposition of maximum sentences, the trial court cannot impose the maximum sentence unless it finds that one of four criteria listed in R.C. 2929.14(C)[4]
applies to the defendant. The trial court's findings
 {¶ 61} must be supported by clear and convincing evidence. State v.Quinn (1999), 134 Ohio App.3d 459, 462.
 {¶ 62} Pursuant to R.C. 2929.14(C), the trial court found at the sentencing hearing, that based on appellant's past criminal history, his failure to be rehabilitated, and his lack of remorse, appellant would very likely commit future crimes. The trial court noted the following statutory factors in considering whether appellant was likely to commit future crimes: (1) appellant was under post release control, on parole, had a prior record, and had not been rehabilitated, R.C. 2929.12(D)(1); (2) appellant has a history of drug use, R.C. 2929.12(D)(4); and (3) appellant showed no genuine remorse, R.C. 2929.12(D)(5). The court also noted the lack of mitigating factors relating to recidivism in finding that the offenses were committed under circumstances which very likely would occur again, R.C. 2929.12(E)(4). Additionally, R.C. 2929.12(D) (1, 2, 3, 5) were mitigating factors that did not apply to appellant.
 {¶ 63} We conclude the trial court found, on the record, that appellant poses the greatest likelihood of committing future crimes. Although the trial court also found that appellant committed the worst form of the offense, the trial court was only required to find one of four criteria listed in R.C. 2929.14(C).[5] Appellant asserts, without citation to any authority, that because he was sentenced on three counts of rape, the trial court must make a separate finding that each rape count was the worst form of the offense. However, appellant's argument ignores the other criteria for the imposition of a maximum sentence set forth in R.C. 2929.14(C).
 {¶ 64} Pursuant to R.C. 2929.14(C), a trial court can also impose the maximum sentence "upon offenders who pose the greatest likelihood of committing future crimes." As noted by the appellate court in State v.Gibbons (Mar. 30, 2000), Stark App. No. 998CA00158:
 {¶ 65} "* * * pursuant to R.C. 2929.14(C), the trial court, in order to impose the maximum sentence, need only determine that one of the four criteria in R.C. 2929.14(C) applies to an offender. And, as stated previously, the determination must be supported by reasons. Therefore, since the trial court provided sufficient reasons to support its finding that the appellant poses the greatest likelihood for committing future crimes, and that finding is sufficient to support the trial court's imposition of a maximum sentence under 2929.14(C), we find the imposition of the maximum sentence for each offense was not error. The fact that the trial court in the case sub judice did not provide sufficient reasons to support its determination that these were the worst forms of the offense becomes irrelevant."
 {¶ 66} After a review of the record, we conclude that clear and convincing evidence supports the trial court's finding that appellant posed the greatest likelihood of committing future crimes and its imposition of maximum sentences. Therefore, the fact that the trial court did not make a separate finding as to each rape count being the worst form of the offense is irrelevant. Accordingly, appellant's fifth assignment of error is found not well-taken.
 {¶ 67} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J., Richard W. Knepper, J., Judith Ann Lanzinger,J., Concur.
[1] {¶ a} "Arriving at your verdict, you must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide all undisputed questions of fact, to apply the instructions of the court to your findings and render your verdict accordingly. In fulfilling your duty, your efforts must be to arrive at a just verdict.
{¶ b} "Okay. Let me repeat this paragraph. * * * (Repeats preceding paragraph.)
{¶ c} "Consider all the evidence and make your finding with intelligence, impartiality, and without bias, sympathy or prejudice, so that the State of Ohio and the defendant will feel that their case was fairly and impartially tried."
[2] {¶ a} R.C. 2950.09(B)(3) provides:
{¶ b} The "judge shall consider all relevant factors, including, but not limited to, all of the following:
{¶ c} "(a) The offender's age;
{¶ d} "(b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
{¶ e} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
{¶ f} "(d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
{¶ g} "(e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
{¶ h} "(f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
{¶ i} "(g) Any mental illness or mental disability of the offender;
{¶ j} "(h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
{¶ k} "(i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
{¶ l} "(j) Any additional behavioral characteristics that contribute to the offender's conduct."
[3] {¶ a} R.C. 2929.14(E)(4) (a-c) provides:
{¶ b} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
{¶ c} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
{¶ d} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
[4] {¶ a} R.C. 2929.14(C) provides:
{¶ b} "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
[5] The trial court found the following statutory factors that relate to appellant committing the worst form of the offense: (1) the victim suffered physical and psychological harm as a result of this offense, R.C. 2929.12(B)(2); and (2) appellant's relationship with the victim facilitated the offense, R.C. 2929.12(B)(6). The court also noted the lack of mitigating factors relating to the seriousness of the crime: (1) the victim did not induce or facilitate the offense, R.C. 2929.12
(C)(1); (2) appellant was not provoked, R.C. 2929.12 (C)(2); and (3) appellant should have expected to cause physical harm to the victim, R.C.2929.12 (C)(3). Based on these facts, the trial court imposed the maximum sentences available.