[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Kimberly Medved, appeals her misdemeanor conviction pursuant to a jury verdict in Lyndhurst Municipal Court. Upon review of the record and arguments of the parties, we affirm.
 {¶ 2} On June 12, 2003, appellant was charged by complaint with one count of telephone harassment, in violation of Highland Heights Ordinance 537.10(b), a misdemeanor of the first degree, which reads:
 {¶ 3} "(b) No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunication device under the person's control, with purpose to abuse, threaten, or harass another person."
 {¶ 4} The charge stems from reported telephone calls made by appellant to Ada Pearlstein, culminating in the specifically charged telephone calls and message left on June 2, 2003. The underlying facts surrounding these telephone calls center around an alleged extramarital relationship between appellant's husband and Pearlstein. Much testimony was presented verifying that the telecommunications took place and that they were in the nature of the appellant wanting to speak with Pearlstein about the alleged affair. In addition, Pearlstein testified to the trauma those telecommunications caused her.
 {¶ 5} On June 18, 2003, appellant was served with a summons, and her subsequent arraignment took place on July 2, 2003. Prior to trial, appellant moved to dismiss the complaint, and the prosecution conversely moved to amend the complaint from a violation of ordinance 537.10(b) to a violation of ordinance 537.10(a)(5). Both motions were denied on June 2, 2004. On November 10, 2004, the prosecution again moved to amend the complaint; this time to clarify the language of the complaint asserting that the purpose of the calls was to "abuse, threaten or harass another person, to wit: Ada Pearlstein." That motion was granted by the trial court.
 {¶ 6} On December 8, 2004, a jury trial commenced and appellant was found guilty as charged in the complaint. On February 2, 2005, she was sentenced to 180 days in jail, a $500 fine and court costs, and was ordered to pay court reporter costs. Her jail term was suspended, and she was alternatively placed on probation for one year. Appellant now appeals asserting three assignments of error.
 {¶ 7} "I. The court below erred when it denied Mrs. Medved's motion for judgment of acquittal under Rule 29.
 {¶ 8} "II. The jury verdict was against the manifest weight of the evidence.
 {¶ 9} "III. The prosecutor's closing argument deprived Mrs. Medved of due process of law and a fair trial."
 Sufficiency and Manifest Weight {¶ 10} Appellant's first two assignments of error challenge both the sufficiency and the manifest weight of the evidence presented in sustaining her conviction. She argues that the trial court erred in denying her Rule 29 motion for acquittal. Under Crim.R. 29, a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. "A motion for judgment of acquittal under Crim.R. 29(A) should only be granted where reasonable minds could not fail to find reasonable doubt." State v.Apanovitch (1987), 33 Ohio St.3d 18, 23.
 {¶ 11} The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. SeeState v. Bell (May 26, 1994), Cuyahoga App. No. 65356. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443, U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph 2 of the syllabus. See, also, State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 12} In the record here, there is clearly sufficient evidence to sustain appellant's conviction. The testimony of Ada Pearlstein, if believed by a jury, is enough to satisfy a sufficiency test. Pearlstein testified that she received her first harassing telephone call from appellant in 1999, when appellant first suspected that Pearlstein was having an affair with her husband. Pearlstein did not receive any further telephone calls until April 2003. It was around that time that appellant claims her husband, Dr. James Medved, admitted to having an affair in the past with Pearlstein. Pearlstein's testimony went on to describe the troubling first telephone call she received from appellant that April, with appellant confronting her about the alleged affair. This testimony was corroborated by Leon Wilneff, Pearlstein's fiancé. Pearlstein further testified that she would receive numerous "hang-up" calls on a number of days and for hours at a time.
 {¶ 13} These harassing telecommunications peaked on June 2, 2003, when appellant actually left a voice message on Pearlstein's answering machine. Pearlstein was not home on that day, but when she called to check her messages, she discovered a message from appellant asking where Pearlstein was because appellant could see the lights on in Pearlstein's house, but she was not answering her phone. The substance of that message would lead one to believe that appellant had gone to the extreme measure of actually going to Pearlstein's home. Again, this testimony was corroborated by several police officers involved with the investigation of this case. Pearlstein testified that she felt she was being stalked and was scared, which led to the appellant being charged. These facts further demonstrate that the telecommunications were made for the purpose to abuse, threaten, or harass Pearlstein.
 {¶ 14} The testimony alone, if believed by a jury, is enough to support a showing of sufficiency; however, the prosecution also strengthened the validity of all the testimony by providing telephone records obtained from Verizon Wireless. Those records indicated that numerous calls from a cell phone owned by appellant and her husband were made to Pearlstein's home telephone number between April 11, 2003 and June 3, 2003, and that the person using the cell phone had dialed "*67" to conceal their identity.
 {¶ 15} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found appellant guilty of telephone harassment beyond a reasonable doubt. Thus, the conviction was supported by sufficient evidence, and appellant's first assignment of error fails.
 {¶ 16} The above-stated facts also are adequate to defeat appellant's second assignment of error, wherein she contends that the jury's verdict was against the manifest weight of the evidence.
 {¶ 17} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. When a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State exrel. Squire v. City of Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 18} The standard of review employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v.Florida (1982), 457 U.S. 31, where the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 19} Upon application of the standards enunciated in Tibbs, the court in State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 20} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 21} It is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169.
 {¶ 22} As discussed above, the evidence presented in this case was legally sufficient to support the conviction. The facts clearly demonstrate that the jury did not lose its way in convicting the appellant. It was not reversible error for this jury to believe the testimony of nine state's witnesses, including six police officers, over that of the appellant. Thus, appellant's conviction was not against the manifest weight of the evidence, and her second assignment of error is also without merit.
 Prosecutorial Misconduct {¶ 23} Appellant's final assignment of error claims that the prosecutor committed misconduct by making improper comments during closing arguments. In addressing a claim for prosecutorial misconduct, we must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected the defendant's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14, 14 Ohio B. 317,470 N.E.2d 883. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed. 2d 78. A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. State v. Treesh, 90 Ohio St.3d 460, 464,2001-Ohio-4, 739 N.E.2d 749.
 {¶ 24} Appellate courts ordinarily decline to reverse a trial court's judgment because of counsel's misconduct in argument unless (a) the argument injects non-record evidence, (b) the argument was likely to have a significant effect on jury deliberations, and (c) the trial court failed to sustain an objections to take other requested curative action when the argument was in process. State v. Maddox (Nov. 4, 1982), Cuyahoga App. Nos. 22600 and 44608 at 9-10. Generally, the prosecution is entitled to a certain degree of latitude in making its closing remarks.State v. Woodards (1966), 6 Ohio St.2d 14, 215 N.E.2d 568.
 {¶ 25} Appellant claims the prosecutor erred by making comments about his beliefs concerning what is and is not the truth in this case and comments about appellant's failure to call Dr. Medved to the stand to testify. Appellant claims the prosecutor's beliefs comments rose to the level of prosecutorial misconduct because closing arguments should be limited to what the evidence before the jury shows. She further claims that the prosecutor's comments regarding her failure to call Dr. Medved as a witness improperly attempted to shift the burden of proof to her.
 {¶ 26} We do not find that the prosecutor's conduct was so improper that it affected the appellant's right to a fair trial. The prosecution's comments regarding appellant's failure to call her husband simply pointed out that her testimony alluded to the fact that her husband had access to the cell phone and potentially could have made those phone calls, yet she did not call him to the stand to corroborate that testimony. Those comments alone do not rise to the level of misconduct. The prosecutor's statements regarding his belief in this matter — although if taken by themselves and out of context they may appear improper — did not amount to sufficient prejudice to deny the appellant a fair trial considering the evidence in this case. Thus, appellant's final assignment of error ultimately fails as well.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Lyndhurst Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Calabrese, JR., J., and Corrigan, J., concur.