THE STATE OF OHIO, APPELLEE, *v.* WOODARDS, APPELLANT.

(No. 39248—Decided March 30, 1966.)

16

18

*Mr. Paul J. Mikus*, prosecuting attorney, and *Mr. John B. Otero*, for appellee.

*Messrs. Adams & Conley* and *Mr. Edward J. Conley*, for appellant.

O'NEILL, J. Errors are assigned as follows:

(1) Two purported confessions of defendant were obtained in violation of his right to the assistance of counsel and were improperly used against him at trial.

(2) Various items were seized incident to an invalid arrest and were improperly admitted into evidence.

(3) Defendant was forced to wear handcuffs and body belt during the trial and was heavily guarded, and the trial court failed to keep order during the course of the trial.

(4) The foreman of the jury failed to reveal on *voir dire* that he was the insurance agent of the sheriff and of a deputy sheriff who was a witness for the prosecution.

(5) Certain items other than those obtained as the result of an unreasonable seizure were improperly admitted into evidence.

(6) Inflammatory statements and the use of items not introduced into evidence were improperly permitted by the trial court during the summation by the prosecutor.

(7) The jury was erroneously charged on the lesser included offense of manslaughter.

(8) The trial court refused to define the word, "psychopath," after the jury had requested such definition.

The first assignment of error is based upon an alleged denial to the defendant of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

In Section 2935.14, Revised Code, it is provided in part:

"If the person arrested is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined * * * be speedily permitted facilities to communicate with an attorney at law of his own choice, or to communicate with at least one relative or other person for the purpose of obtaining counsel * * *."

In *Escobedo* v. *Illinois*, 378 U. S. 478, the United States Supreme Court held that where an investigation had focused upon a particular suspect who had been taken into custody and interrogated in a manner lending itself to incriminating statements, where the accused had requested and been denied an opportunity to consult with counsel, and where he had not been effectively warned of his right to remain silent, he was improperly denied "the assistance of counsel" to which he was constitutionally entitled.

Under Ohio law, the accused must be permitted to communicate with counsel or a relative, or the officers must contact someone for him for the purpose of obtaining counsel irrespective of whether the police effectively warn him of his absolute right to remain silent. *City of Toledo* v. *Dietz*, 3 Ohio St. 2d 30, certiorari denied, 34 U. S. Law Week 3218.

It appears from the record that the defendant did not request counsel and was not denied an opportunity to consult with counsel. It appears further from the record that he was advised by an assistant prosecutor and by the deputy in charge of the interrogation that he was not required to make any statement, and that any statement he might make could be used against him.

The defendant, when he testified in his own behalf, did not controvert the testimony of three deputy sheriffs to this effect. Since the defendant testified that he had gone to the victim's home and had intercourse with her, and that she had been injured when the two of them fell from a table, he waived any objection he might have made to the testimony of the prosecutor's witness with regard to the confessions which he made while he was being interrogated prior to being charged with murder. *Blanchard* v. *State* (Miss.), 184 So. 66; *State* v. *O'Neal*, 210 S. C. 305, 42 S. E. 2d 523; *State* v. *Smith*, 140 Me. 255, 274, 37 A. 2d 246; *Jordon* v. *Maxwell, Warden*, 3 Ohio St. 2d 115; Wigmore on Evidence (3 Ed.), 129, Section 18, note 35; McCormick on Evidence, 344, Section 55. Contra, *Commonwealth* v. *Noble*, 371 Pa. 138, 146, 88 A. 2d 760.

He also introduced the testimony of his own doctor, who repeated what defendant had told him concerning what hap-

pened when he went to Mrs. Van Arsdale's home during the night of July 12.

Due process of law does not require that defendant be permitted to give his version of the event while having previous statements which he made excluded from the trial.

Defendant assigns as error the introduction into evidence of several articles of clothing allegedly seized illegally by the deputy sheriff who went with him into his home. The claim is not that the search was unreasonable, but rather that it was not incident to a valid arrest. The assertion of invalidity is based upon the lack of probable cause for arrest, the failure to obtain a warrant, and the failure to inform defendant of the charge against him.

An arrest under Ohio law and under the United States Constitution must be based upon reasonable cause or probable cause. Section 2935.04, Revised Code; *Beck* v. *Ohio*, 379 U. S. 89. In *Beck, supra*, at page 96, the court stated:

"When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed." These facts must not be from so vague and untested a source as would require a judicial officer to deny the warrant. *Wong Sun* v. *United States*, 371 U. S. 471, 479.

Under certain circumstances, a warrant need not be obtained in order to render an arrest valid. The arresting officer must have probable cause to believe that a felony was committed by defendant, and the circumstances must be such as to make it impracticable to secure a warrant. *Johnson* v. *United States*, 333 U. S. 10; *Jones* v. *United States*, 357 U. S. 493, 499, 500; *Chapman* v. *United States*, 365 U. S. 610, 615.

In the instant case, the officers had probable cause to suspect the defendant of the offense which had been committed. It was within their knowledge that (1) the assailant must have been known to the victim, since there was no sign of forcible entry; (2) it was an offense of a violent nature; (3) the defendant was known to the victim, having rented her upstairs apart-

ment and had a previous record, including sexual offenses; and (4) he was a large and powerful man and was known to have a violent temper.

This was not the untested hearsay statement of an unreliable informant but was based upon personal observation of the premises, conversation with the victim's granddaughter, who had known the victim and the defendant, and the personal knowledge of the officers.

In this case, the failure to obtain a warrant was not unreasonable. The officers could not know whether defendant would attempt an escape. In fact, they knew that he had previously left the state to avoid arrest pursuant to a warrant and had not returned until the charges were dropped. Therefore, proceeding without a warrant was justified.

Defendant was not arrested for murder, but rather for robbery, and was not informed of the real charge against him. This point as well as the other purported illegalities in the arrest were not raised prior to or during the trial, or before the Court of Appeals.

Although this court does have discretion to review a claimed denial of constitutional rights not raised below, under Section 2505.21, Revised Code, that discretion will not ordinarily be exercised to review such claims, where the right sought to be vindicated was in existence prior to or at the time of trial. *Mapp* v. *Ohio*, 367 U. S. 643, and *Ker* v. *California*, 374 U. S. 23, which apply to the states federal standards of reasonableness and probable cause in determining the validity of arrests, searches and seizures, do not preclude the operation of reasonable state procedures. Those cases were decided prior to the trial of this case. There was, therefore, no reason for not raising the question of the validity of the arrest and the search and seizure by motion to suppress prior to trial or objection at trial.

It appears from the record that the only items which were the subject of a search and seizure at the time of the arrest were defendant's clothes, shoes and handkerchief. However, several of the items allegedly seized illegally were introduced into evidence by defendant and he identified several of the state's exhibits on direct examination.

Since defendant did not raise this question at the first opportunity, in fact, introduced several of the items himself, and identified certain of the state's exhibits without objection, he may not now assert that this was to his disadvantage. *State v. Davis*, 1 Ohio St. 2d 28.

Defendant alleges as error that the foreman of the jury did not reveal the full extent of his acquaintance with the sheriff and one of his deputies, a witness in this case.

On *voir dire*, the juror stated that he knew the sheriff and deputy Lois Carson casually, not personally, just by meeting them. After trial, it was learned that the juror had procured an insurance policy for the deputy. It appeared from affidavits of the juror and the deputy that the transaction took place by mail and telephone and was not the result of solicitation by the juror, and that affiants knew each other "casually."

It does not appear that there was any attempt on the part of the juror to conceal the nature of the relationship. He admitted knowing both the sheriff and the deputy. Counsel for defendant contends that the juror should have answered, "business," rather than, "casual," when he was asked the nature of his acquaintance with the sheriff and deputy. However, Section 2945.25, Revised Code, does not specify either "business" or "casual" acquaintance with a witness as a challenge for cause, and the fact that a juror is acquainted with a witness would not necessarily affect the juror's impartiality. See *People v. Wilkes*, 44 Cal. 2d 679, 284 P. 2d 481.

It is provided by Section 2945.27, Revised Code, that the court shall examine prospective jurors, with reasonable examination to be allowed to the prosecutor and counsel for the defense. The nature of the relationship between a witness and a juror would seem to fall within the scope of reasonable examination, and counsel does not claim that there was any limitation on his right to examine the juror. Counsel has an obligation to help discover, by examination, those facts which would make a juror unsuitable to serve in a particular case.

Defendant alleges further as error that five muscular uniformed deputies guarded him, that he was forced to wear handcuffs fastened to a body belt during the trial, and that the trial

court failed to keep order throughout the trial. The record indicates that there were five deputies discreetly stationed at various points in the courtroom, and that two of them were in plain clothes. There is nothing in the record to indicate that the trial was disorderly.

The record does, however, show that defendant was handcuffed throughout the trial, and that objection was made thereto prior to the commencement of the trial. Ordinarily a prisoner is entitled to appear free of shackles or bonds which would restrict his free movements. It is uniformly held, however, that the prisoner may be shackled when such precaution is shown to be necessary to prevent violence or escape. It lies within the discretion of the trial court to determine such necessity, based upon the conduct of the accused. An appellate court will not reverse the trial court's action except in case of an abuse of that discretion. *Tunget* v. *Commonwealth*, 303 Ky. 834, 198 S. W. 2d 785, certiorari denied, 331 U. S. 833; *State* v. *Coursolle*, 255 Minn. 384, 97 N. W. 2d 472.

The trial court in the instant case ruled that the handcuffs and belt should not be removed, stating that it was up to the sheriff to decide. During the trial, evidence was presented that, while defendant was confined in the county jail, a one-inch piece of hacksaw blade, a piece of old shirt used as a belt, a pencil, a metal cleat from his shoe, a key and a five-dollar bill were found in defendant's cell. Furthermore, he pleaded not guilty by reason of insanity. These are valid reasons for refusing to unshackle the defendant during the trial. There was not an abuse of discretion on the part of the trial court.

Objection was timely made to the admission of the autopsy report and the death certificate into evidence. These documents were objected to on the ground, among others, that they contained conclusions and opinions of the person who filled them out as to the cause of death. In the death certificate, the conclusion to which objection was made was "extensive beating involving the entire body," and in the autopsy report, the objectionable statement was, "beaten by unknown assailant."

In *Carson* v. *Metropolitan Life Ins. Co.*, 156 Ohio St. 104, an insured died and beneficiaries brought suit to recover cer-

tain funds payable under a policy of life insurance. In case of suicide, the company was not obligated to pay. The issue was whether a coroner's report and death certificate containing conclusions and opinions as to the cause of death could be admitted into evidence.

The court held that while Section 2855-11, General Code (Section 313.10, Revised Code), makes the records of the coroner admissible, admissibility is limited to the facts contained therein. The court states, at page 114:

"* * * But, in the absence of any direct testimony as to suicide, an expression by a coroner or physician that a decedent committed suicide is a mere opinion and does not constitute a fact as contemplated by the provisions of the statutes to which we have referred. That the admission of such opinions was prejudicial cannot be doubted."

In the instant case, there was extensive testimony, without objection, as to the cause of death. The deputy coroner who performed the autopsy on the body of the victim testified, without objection, that the injuries were caused by "external violence applied to multiple areas of the body." His opinion was that the injuries could not have been caused by one blow or by a fall or by defendant falling upon the victim. On cross-examination by defendant's counsel he testified that the injuries were produced by crushing blows with a critical localization of weight.

This was the professional opinion of one who had observed the body of the victim at great length. Such opinion was based upon examination of the condition of the body and the probability as to the cause of such condition. In *Carson, supra* (156 Ohio St. 104), the opinion of the coroner in the coroner's report and death certificate went further than the opinion in the documents in this case. There, the opinion stated not only what caused the death, but who caused it. It was this latter aspect of the opinion which created the prejudice. In the instant case, since there was extensive testimony by witnesses, and since the documents did not name the assailant, their admission was not prejudicial error.

Objection was also timely made to the admission of 15 slides taken during the course of the autopsy. The rule is well settled

that photographs and color transparencies are not objectionable so long as they are properly identified, are relevant and competent and are accurate representations of the scene which they purport to portray. Indeed, photographs frequently convey information to the court and jury more accurately than words. *Oliver* v. *State*, 225 Ark. 809, 286 S. W. 2d 17; *Vaca* v. *State*, 150 Neb. 516, 34 N. W. 2d 873.

Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury. *People* v. *Brubaker*, 53 Cal. 2d 37, 346 P. 2d 8; *People* v. *Jenko*, 410 Ill. 478, 102 N. E. 2d 783; *Commonwealth* v. *Novak*, 395 Pa. 199, 150 A. 2d 102.

The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant. See *Wisniewski* v. *State*, 51 Del. 84, 138 A. 2d 333. But see *People* v. *Jackson*, 9 Ill. 2d 484, 138 N. E. 2d 528; *Kiefer* v. *State*, 239 Ind. 103, 153 N. E. 2d 899.

This court cannot say that the admission of the color slides prejudiced defendant's right to a fair trial or that the trial court abused its discretion in admitting them into evidence.

Defendant alleges as error the reference by the prosecutor to previous arrests and convictions of defendant. Evidence of previous convictions may be introduced for the purpose of impeaching credibility. Section 2945.42, Revised Code; *Harper* v. *State*, 106 Ohio St. 481.

This objection was waived by defendant by the introduction of the following testimony of his own expert witness, Dr. Friedman:

"It was significant, and this we learned from him directly, that early in his development, at the age of 14 he had been arrested for robbery. I think he called it breaking and entering, but because of his youth, he was placed on probation at the time.

"There were also other arrests for various antisocial offenses, peeping tom activity, assaulting a girl, and so on. So that by the age of 17, he had already been arrested three or four times."

This illustrates defendant's previous record more clearly than any testimony elicited by the prosecutor.

Defendant complains that he was prejudiced by the following argument of the prosecutor in his summation to the jury:

"I have used this before, he is faking. Remember ladies and gentlemen of the jury, we have confidence in you that they will not be able to fraudulently present to you something that did not happen or that there is a different version of what actually happened."

And the prosecutor stated further:

"* * * Woodards is a misfit like a gangrenous leg on a diabetic body, like an inflamed, useless appendix that threatens the body, the body and the society of the state of Ohio.

"He caused a cruel, unnecessary death. He asks mercy from you. Yet, he showed none.

"Remove him from society like you would a parasite. * * *""

In *State* v. *Muskus*, 158 Ohio St. 276, the court held that an appeal to the pecuniary interest of the jurors as taxpayers was improper and that the refusal of the trial court to sustain objections to such argument was prejudicial error. There the prosecutor appealed at length to the passions and prejudices of the jury in most inflammatory language. The language complained of here does not approach the scope or violence of the language used there.

Although the statements of the prosecutor were intemperate and might better have been left unsaid, some latitude and freedom of expression should be allowed. *People* v. *Allen*, 351 Mich. 535, 88 N. W. 2d 433. The jury should be given credit for sufficient common sense and sound judgment to discount the remarks made in this case. Likewise, there is nothing in the record to show that defendant thought the argument was improper at the time, since there was no objection to it.

During his summation, the prosecutor, arguing in support of the circumstantial evidence of rape, used, for purposes of demonstration, a bottle, a straw, a pen, a dowel, and a pair of calipers. These items had not been introduced into evidence and objection was made to their use. The court allowed their use for demonstration purposes only.

The cases in the area of visual aids not introduced into evidence deal primarily with the use of blackboards and charts. See *Affett* v. *Milwaukee & Suburban Transport Corp.*, 11 Wis. 2d 604, 106 N. W. 2d 274; *Caley* v. *Manicke*, 24 Ill. 2d 390, 182 N. E. 2d 206.

It is difficult to perceive a substantial difference between a blackboard or chart and other graphic illustrations of an idea which is being legitimately advanced by counsel. It would be permissible for counsel to call upon the jury to imagine such an illustration, and there is no harm in allowing counsel to present his point in a more concrete manner.

The defendant claims that, in giving the charge on manslaughter, the trial court incorrectly stated the law, and that such error is prejudicial.

That portion of the charge about which defendant complains is as follows:

"The law of Ohio says that whoever unlawfully kills another is guilty of manslaughter. The killing may be either upon a sudden quarrel or unintentionally while the slayer is engaged in some unlawful act.

"You will observe that manslaughter need not be done purposely or maliciously and that the element of attempting to perpetrate rape is also lacking.

"If you are convinced beyond a reasonable doubt that the defendant unlawfully killed Margaret Van Arsdale, without purpose to kill her, without malice, and without attempting to perpetrate rape, then your verdict may be guilty of manslaughter."

This charge, because of its incompleteness and imprecision, is ambiguous and, therefore, erroneous. However, the majority of this court is of the opinion that, upon the record and circumstances of this case, this charge was not prejudicial to the defendant.

The defendant makes no complaint concerning the charge of the court to the jury on first degree murder. The trial court instructed the jury that only if the jury found the defendant not guilty of murder in the first degree should it consider the lesser included offenses. The defendant makes no objection to this

charge. The jury found the defendant guilty of murder in the first degree and the evidence in the record is sufficient to support such a jury verdict.

The syllabus of *State* v. *Loudermill*, 2 Ohio St. 2d 79, is not applicable. In that case, both the defendant and the prosecutor requested a charge on the lesser included offense of manslaughter. In this case, no request was made by either party for a charge to be given upon the offense of manslaughter, and the defendant takes the position that the court was not required by the evidence to give such a charge.

After the jury had retired to consider the verdict a note was sent to the trial judge requesting, among other things, that he define the word, "psychopath." The judge referred the jury to the testimony of the doctors as they had given such definition. Counsel for the prosecution and the defense agreed to the answers which the court gave to the jury's questions. There can, therefore, be no claim of error predicated upon the trial court's answer to the jury.

This court, finding no error in the record prejudicial to the rights of the defendant, affirms the judgment of the Court of Appeals.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.