[Cite as *State v. White*, 2015-Ohio-5365.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-160 |
| v. | : | (C.P.C. No. 12CR-4418) |
| Vincent D. White, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 22, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Laura M. Swisher*, for appellee.

*Yeura R. Venters*, Public Defender, and *John W. Keeling*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Vincent D. White ("White"), appeals from a final judgment of the Franklin County Court of Common Pleas that convicted him of, among other crimes, two counts of aggravated murder and sentenced him to life in prison without the possibility of parole. The judgment followed a jury trial in which White and a co-defendant were found guilty of several offenses arising from a robbery. White argues that his trial counsel was ineffective due to a conflict, that the trial court gave improper instructions to the jury, and that ex parte communications between law enforcement and the trial court led to his being restrained during the trial in a way that denied him his right to a fair trial. We overrule all of White's assignments of error and affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   On August 30, 2012, a Grand Jury indicted White and an alleged co-conspirator.  The Grand Jury charged White with one count of aggravated burglary, three counts of aggravated robbery, four counts of aggravated murder, two counts of attempted murder, two counts of felonious assault, and one count of possessing a firearm while under disability.   All counts (except the weapon under disability count) contained specifications for the use of a firearm.

{¶ 3}   The counts in the indictment arose from a single incident.  On July 29, 2012, four men were shot in a house located at 1022 East 17th Avenue in Columbus, Ohio. Keith Paxton (aka "Gutter") and Albert Thompson (aka "T") were killed in the attack. Juanricus Kibby and Miquel Williams suffered bullet wounds but recovered.

{¶ 4}   The case went to trial on October 28, 2013.  At the trial, both surviving victims identified White as one of the two shooters.  In addition, another witness, Jeffrey Harris, testified that White had told him beforehand about White's plan to rob the house and then afterwards offered Harris a share of the money. Kibby and Williams both had known White for a long time; yet, neither identified him the first time they spoke with police following the shooting. Harris, who was initially suspected of having some involvement in the crime, went to the police to clear his name, but he did not tell the police the story he told at trial about White telling him of his plan to rob the house.

{¶ 5}   White's co-defendant presented an alibi witness, who claimed that the co-defendant was not present during the shooting.  White admitted that he was at the house and shot some of the people there. However, he claimed that he shot in self-defense because, when he arrived to buy drugs, the four individuals who were subsequently deemed to be the victims, made him get on his knees at gunpoint and were robbing him. Forensic evidence regarding the direction and angles from which some of the victims were shot tended to contradict White's version of the events, as did the fact that White and the other shooter each fired at least six times and the four victims did not return fire. Thompson was shot as if he were getting up from a seated position, and Paxton was shot in the back shoulder.  Only two guns were used in the shooting and neither were any of the guns in the possession of the house occupants.

{¶ 6}  On November 5, 2013, the trial concluded, and the jury began its deliberations.  Two days later, the jury announced its verdict.  The jury found White guilty on all counts.  The trial court also found White guilty of having a weapon while under disability.  The trial court held a sentencing hearing on January 22, 2014 and sentenced White to life in prison without parole.

{¶ 7}  White now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 8}  White advances four assignments of error:

> [I.] THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION BASED UPON THE ACTUAL AND POTENTIAL CONFLICTS OF INTERESTS THE DEFENDANT'S TRIAL COUNSEL HAD IN THIS CASE.

> [II.] THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURORS THAT IT HAD TO FIND THE DEFENDANT NOT GUILTY OF AGGRAVATED MURDER BEFORE IT COULD CONSIDER THE DEFENDANT'S GUILT OF THE LESSER-INCLUDED OFFENSE OF MURDER, THE SO-CALLED "ACQUITTAL FIRST" INSTRUCTION THAT WAS HELD TO BE IMPROPER IN *STATE V. THOMAS*, 40 OHIO ST. 3d 213, 533 N.E.2d 286 (1988), AND FURTHER ERRED WHEN IT INSTRUCTED ON THE AGGRAVATED MURDER CHARGES IN COUNTS SEVEN AND EIGHT WITHOUT ALSO INSTRUCTING ON THE LESSER OFFENSE OF MURDER AND DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO THESE INSTRUCTIONS.

> [III.] WHEN THE STATE CLAIMED THAT THE DEFENDANT FLED THE SCENE DUE TO A CONSCIOUSNESS OF GUILT, WHILE THE DEFENDANT MAINTAINED THAT HE FLED THE SCENE OF THE SHOOTING OUT OF FEAR FOR HIS SAFETY, IT WAS PREJUDICIAL CONDUCT FOR THE JUDGE, OVER OBJECTION, TO PICK A SIDE AND INSTRUCT THE JURY ONLY WITH RESPECT TO THE STATE'S THEORY OF GUILT AND TO INSTRUCT ONLY ON THE INFERENCES REQUESTED BY THE STATE AND TO EMPHASIS [sic] AND

GIVE UNDUE PROMINENCE ONLY TO THE FACTS THAT SUPPORTED THE STATE'S THEORY.

[IV.] THE TRIAL COURT ERRED WHEN IT VIOLATED THE RULES AGAINST HAVING EX PARTE COMMUNICATIONS WITH THE STATE WHERE THE COURT WAS TOLD EXTREMELY PREJUDICIAL ALLEGATIONS CONCERNING THE DEFENDANTS WHICH SO FRIGHTENED THE COURT THAT IT ORDERED, WITHOUT A PROPER HEARING, EXTRAORDINARY SECURITY MEASURES FOR THE COURTROOM AND THE TRIAL, AND THE ALLEGATIONS WERE SO PREJUDICIAL THAT THEY AFFICETED [sic] THE RIGHTS OF THE DEFENDANT TO A FAIR TRIAL FROM AN IMPARTIAL JUDGE.

## III. DISCUSSION

### A. First Assignment of Error – Whether White was Deprived of the Right to Conflict-Free Counsel in Violation of the Sixth Amendment

{¶ 9} White asserts that, at the time of the trial, his trial attorney, Javier Armengau, was under indictment in Franklin County and facing very grave challenges to his own freedom, finances, and license to practice law. White argues that this situation created a conflict of interest. That is, White suggests that Armengau would have been conflicted over whether to devote time to preparing his own defense or that of his client; Armengau might have chosen to take a greater percentage of White's financial resources in fees to help finance his own defense rather than hire an investigator in White's case; and Armengau would have been reluctant to vigorously represent White for fear of angering the same prosecutor's office that was prosecuting him, or even, conversely, might have failed to engage in any plea-bargaining efforts in White's case out of an indignant or vengeful desire to gain a victory over the prosecutor's office.

{¶ 10} White argues that there is nothing in the record to show that he was properly advised of the potential conflict of interest or that he waived this potential for conflict on the record or in writing. Plaintiff-appellee, State of Ohio, argues that there is no information in the record of this case regarding Armengau's indictment, conviction, or disciplinary proceedings.

{¶ 11} " 'A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13, quoting *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. Though White's brief asserts facts about Armengau's difficulties, the record in this direct appeal contains no evidence or information whatsoever about Armengau's particular situation. Although White refers to the caption of Armengau's criminal case and the caption of his disciplinary case before the Supreme Court of Ohio, he does not expressly request that we take judicial notice of the same. Nevertheless, even if we were to take judicial notice of the fact that Armengau was indicted for a number of serious criminal offenses before White's trial and was convicted and imprisoned for them after White's trial, the record would still be devoid of any factual details regarding Armengau's licensure issues. Furthermore, there is nothing in the record of this direct appeal indicating White was unaware of Armengau's situation. In short, while we understand White's argument, that his counsel may have been distracted and conflicted by the fact that he was suffering severe legal and personal difficulties at the same time that he was engaged in litigating White's murder trial, we lack the necessary facts to fully consider such a matter in a direct appeal. A direct appeal, where the record is limited and where the record contains no mention of any of the relevant facts at issue, is not the vehicle to make such an argument.

{¶ 12} White's first assignment of error is overruled.

**B. Second Assignment of Error – Whether the Trial Court Gave an Impermissible Acquit First Instruction**

{¶ 13} The Supreme Court of Ohio has held:

> If a jury is unable to agree unanimously that a defendant is guilty of a particular offense, it may proceed to consider a lesser included offense upon which evidence has been presented. The jury is not required to determine unanimously that the defendant is not guilty of the crime charged before it may consider a lesser included offense.

*State v. Thomas*, 40 Ohio St.3d 213 (1988), paragraph three of the syllabus. The Supreme Court adopted this rule because, though the risk of coerced decisions may be present in any jury deliberation, an "acquittal first" instruction exacerbates such risk. *Id.* at 219-20.

" 'When the jury is instructed in accordance with the "acquittal first" instruction, a juror voting in the minority probably is limited to three options upon deadlock: (1) try to persuade the majority to change its opinion; (2) change his or her vote; or (3) hold out and create a hung jury.' " *Id.* at 220, quoting *State v. Allen*, 301 Ore. 35, 39, 717 P.2d 1178, 1180 (1986).

{¶ 14} In this case, the trial court instructed on the offense of aggravated murder and then gave the following instruction:

> If you find the State has failed to prove prior calculation and design beyond a reasonable doubt, you must find the Defendant not guilty of Aggravated Murder and consider the lesser offense of Murder.

(Tr. 1012.) White argues that this constitutes a prohibited "acquit first" instruction in violation of *Thomas*. (Appellant's Brief, 39-46.) Nonetheless, the state points out that both this court and the Supreme Court of Ohio have previously found that nearly identical instructions were not so improper as to require reversal, even though they were poorly written and though better instructions would have incorporated the "inability to agree" language adopted by *Thomas. See, e.g., Thomas* at 220-21; *State v. Wright*, 10th Dist. No. 00AP-985 (Nov. 13, 2001); *State v. Greene*, 10th Dist. No. 90AP-646 (Mar. 31, 1998); *State v. Hawkins*, 10th Dist. No. 97AP-740 (Mar. 24, 1998); *State v. Roe*, 10th Dist. No. 92AP-334 (Sept. 22, 1992). As the Supreme Court outlined in *Thomas*, the preferred approach upon giving instructions to a jury under these circumstances would have been a holding that is easily adaptable to an instruction:

> [You, the] jury must unanimously agree that the defendant is guilty of [aggravated murder] before returning a verdict of guilty on that offense. If [you are] unable to agree unanimously that a defendant is guilty of [aggravated murder], [you] may proceed to consider [the] lesser included offense [of murder] upon which evidence has been presented. [You are] not required to determine unanimously that the defendant is not guilty of the crime [of aggravated murder] before [you] consider a lesser included offense.

*Thomas* at 220, quoting and adopting *State v. Muscatello*, 57 Ohio App.2d 231 (8th Dist.1977), paragraph three of the syllabus. Moreover, the Ohio Jury Instructions include their own version of what amounts to the *Thomas* instruction:

> If all of you are unable to agree on a verdict of either guilty or not guilty of (*insert greater offense charged*), then you will continue your deliberations to decide whether the state has proved beyond a reasonable doubt all the essential elements of the lesser included offense of (*insert lesser offense*).

*Ohio Jury Instructions*, CR Section 425.09 (Rev. May 2, 2015).

{¶ 15} In this case, trial counsel failed to object to the trial court's instruction or to request a proper *Thomas* instruction. Thus, we cannot take notice of this error unless we find that it constituted plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The Supreme Court of Ohio has recently reiterated that:

> [This rule places] "three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, *i.e.*, a deviation from a legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial."

*State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, ¶ 13, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *see also State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62. In this case, considering existing case law in which similar instructions to those given here were not reversed, we cannot say that this error is plain. Under these circumstances, we overrule White's second assignment of error.

### C. Third Assignment of Error – Whether the Trial Court Erred in Instructing that Flight Could be Considered as Evidence of Guilt Where Defendant Claimed Self-Defense and Presented Other Factual Explanations for his Flight

{¶ 16} At trial, it was undisputed that White left the scene of the shooting on foot, disposed of the gun in the trash, checked into a hotel under someone else's name, and stayed there for several days, spending time with his daughter and consulting with an attorney before voluntarily turning himself in to police. The prosecution argued that this behavior was not the behavior of a person who had acted in self-defense and that it showed consciousness of guilt. The defense argued that White fled the scene initially

because he was afraid for his life and that he stayed in the hotel under an assumed name to give himself the opportunity to retain and consult with a lawyer and spend some time with his daughter before surrendering himself. The trial court, over objection by the defense, instructed the jury as follows:

> In this case, there was evidence that the Defendant Vincent White fled from the scene. You are aware – I mean – you are instructed that you may not presume the Defendant guilty from such evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused's flight and related conduct can be considered evidence of consciousness of guilt and thus of guilt itself.

(Tr. 1021.)

{¶ 17} White argues that it was error for the trial court to have given an instruction on flight in this case because there were explanations for his behavior after the shooting other than consciousness of guilt and that the trial court, in giving such an instruction, was granting a judicial imprimatur of the prosecution's view of the facts.  Essentially, White argues that, in giving that instruction and only that instruction, the judge picked a side and implicitly recommended a factual inference to the jury.  The state responds that giving a flight instruction is a matter of discretion, and the word "may" in the instruction leaves open the possibility that the jury could have chosen not to infer "consciousness of guilt" and instead credit White's explanation.  The determination of whether or not to give a flight instruction is a matter within the trial court's discretion. *See, e.g.*, *State v. Hill*, 8th Dist. No. 98366, 2013-Ohio-578, ¶ 48-49. Under typical circumstances, as the state argues, if there is sufficient evidence to show that a defendant attempted to avoid apprehension, a flight instruction is proper. *Id.* at ¶ 49.  However, White does not argue that there was insufficient evidence in the record to justify an instruction about flight; he argues that it was improper to give a flight instruction that endorsed only the inference preferred by the state where the facts supported more than one inference about his conduct, and each side argued for a different inference.

{¶ 18} In support of his assignment of error, White cites cases regarding jury instructions about factual inferences that may be drawn from a refusal to take a breath test in an OVI case. (Appellant's Brief, 48-53, citing *Maumee v. Anistik*, 69 Ohio St.3d

339 (1994); *Columbus v. Maxey*, 39 Ohio App.3d 171 (10th Dist.1988).)    The facts in these cases are not analogous to the facts in the case before us.  Here, after shooting the victims, White left the scene, disposed of the gun, stayed in a hotel under another's name, and turned himself in.

{¶ 19} More factually analogous to the case at bar is *State v. Shepherd*, 10th Dist. No. 07AP-223, 2007-Ohio-5405.  In that case, the appellant was charged with robbery. The evidence presented at trial showed that the appellant and his passenger drove away from the scene after the passenger robbed a gas station.  The appellant admitted that he was driving the car but that he had picked up the passenger on the side of the road and knew him only as "Willie."  *Id.* at ¶ 3.  On appeal, the appellant argued that the trial court erred when it instructed the jury on flight as evidence of guilt by giving the following instructions: "Flight or its analogous conduct may be considered by you as consciousness of guilt."  *Id.* at ¶ 5.  The appellant argued that the court should have given the instruction outlined in the Ohio Jury Instructions[1] at the time.    This court determined, after

---

[1] The *Ohio Jury Instructions*, Section 405.25 (2005), at the time provided:
> CONSCIOUSNESS OF GUILT. Testimony has been admitted indicating that the defendant [fled the scene]. * * * You are instructed that [flight] alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) * * * of guilt.  If you find that the facts do not support that the defendant [fled], or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) * * * of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime[] charged.  You alone will determine what weight, if any to give to this evidence.

*Shepherd* at ¶ 6.

Today, *Ohio Jury Instructions*, CR Section 409.13 (Rev. Aug. 17, 2005) reads:
> CONSCIOUSNESS OF GUILT. Testimony has been admitted indicating that the defendant (fled the [scene] * * *. You are instructed that (describe defendant's conduct) alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) (awareness) of guilt. If you find that the facts do not support that the defendant [fled], or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) (an awareness) of

comparing the given instruction to the instruction suggested by the appellant, that the trial court did not abuse its discretion. The court noted that, while the Ohio jury instruction is "more detailed and explicit, the instruction given by the trial court is not incorrect and does not conflict with the suggested OJI instruction." *Id.* at ¶ 8. The court further observed that the given jury instruction "substantially mirrors the language from paragraph six of the syllabus in *State v. Eaton*, 19 Ohio St.2d 145, 160 (1969), in which the court stated that ' "flight from justice, and its analogous conduct, have always been indicative of a consciousness of guilt." ' " *Shepherd* at ¶ 18. The court also observed that: (1) the given instruction indicated that the jury "may" find flight demonstrated consciousness of guilt and left open the possibility that there may have existed other motivations to move appellant to leave the scene; and (2) jury instructions must be considered as a whole and the court had also instructed the jury that it was it's sole function to judge the disputed facts.[2] *Id.*

{¶ 20} In *Eaton*,[3] the appellant was charged with first-degree murder during an attempted robbery. The appellant claimed the shooting was accidental. Evidence was presented that the appellant left the scene "without attempting to aid the person whom he claims was accidentally killed." *Id.* at 160. In considering whether the jury was properly instructed on the element of intent to commit homicide, the Supreme Court held that: "Flight from justice, and its analogous conduct, may be indicative of a consciousness of guilt." *Id.* at paragraph six of the syllabus. The Supreme Court noted that: " 'Flight from justice, and its analogous conduct, has always been indicative of a consciousness of guilt. It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are

---

guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime(s) charged. You alone will determine what weight, if any, to give to this evidence.

[2] The trial court in the case at bar also instructed the jury that it was the function of the jury to judge the disputed facts. "You decide the disputed facts, and the court provides the instructions of law." (Tr. 989.) The court further instructed: "You are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence." ( Tr. 992.)

[3] In a more recent case, *State v. Harris*, 142 Ohio St.3d 211, 2015-Ohio-166, the Supreme Court of Ohio noted that "[c]onsciousness of guilt is no different from guilt itself." *Id.* at ¶ 34, citing *Eaton*; *Williams*.

admissible as evidence of consciousness of guilt, and thus of guilt itself.' " *Id.* at 160, quoting 2 Wigmore, *Evidence*, Section 276 (3 Ed.) at 111, and cases cited.

{¶ 21} In *State v. Taylor*, 78 Ohio St.3d 15, 29-30 (1997), the appellant was charged with aggravated murder. Evidence was presented at the trial that, after shooting the victim, the appellant and an accomplice left the scene and while leaving, the appellant yelled out of the car window: "It was self-defense." The Supreme Court of Ohio considered whether the following instruction was given in error: "Flight, in and of itself, does not raise a presumption of guilt, but unless satisfactorily explained, it tends to show consciousness of guilt or a guilty connection with the crime." *Id.* at 27. The Supreme Court held that, despite the appellant's claims, the instruction was "neither arbitrary nor unreasonable, and did not create an improper mandatory presumption." *Id.* The Supreme Court quoted from *Eaton* in stating: " 'Flight from justice * * * may be indicative of a consciousness of guilt.' " *Id.*

{¶ 22} In consideration of our precedent in *Shepherd* and the Supreme Court's observations in *Eaton*, *Harris*, and *Taylor*, we cannot say that the trial court abused its discretion in giving this instruction. Accordingly, we overrule White's third assignment of error.

### D. Fourth Assignment of Error – Whether the Trial Court Erred in Imposing Security Measures Upon Defendant Without a Hearing Based Upon Out-of-Court Communications from Jail Officials

{¶ 23} White argues that the trial court engaged in impermissible ex parte communications regarding the threat White and his co-defendant posed to courtroom safety, as well as communications about inappropriate social media (Facebook) posts by a relative of White. White argues that the trial court improperly used this information, without the benefit of a hearing to order that White and his co-defendant be shackled (leg irons only)[4] during the trial. White urges us to find that this shows that he did not receive a fair trial from an impartial judge, according to his right.

---

[4] White's co-defendant was also required to wear a stun belt underneath his outer clothing.

{¶ 24} Rule 2.9 of The Code of Judicial Conduct states that a "judge shall not initiate, receive, permit, or consider ex parte communications." The state, citing Black's Law Dictionary, argues that communications from sheriff's deputies at the jail are not ex parte communications in the relevant sense. The current edition of Black's Law Dictionary defines "*ex parte* communication" as: "A communication between counsel and the court when opposing counsel is not present." Black's Law Dictionary (10th Ed.2014). However, notwithstanding Black's definition, the comments to Rule 2.9 suggest that the term is not to be read so narrowly in this context. Comment 3 to Jud.Cond.R. 2.9 reads: "The proscription against communications concerning a proceeding includes communications with lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted by this rule." We therefore cannot agree with the state. Sheriff's deputies stationed at the jail are in a unique position to gather information about persons in their custody. Were their communications beyond the reach of this rule, a deputy could overhear a confession or even a malicious rumor and relay that to the judge ex parte without any opportunity for the defense to challenge the matter (or even be aware of it). Law enforcement officers (who are associated with the state or government by their very nature) are not privileged to engage in substantive ex parte communications with a judge about pending cases any more than a defense attorney's secretary, paralegal, or investigator could do so.

{¶ 25} However, even though communications from sheriff deputies at the jail can be characterized as ex parte communications, there are specified exceptions within the rule that support communications to a judge by sheriff's deputies. One that we find relevant (and that will consistently be relevant to proper communications between a judge and courthouse or jail security) is this: "When circumstances require it, an *ex parte* communication for scheduling, administrative, or emergency purposes, that does not address substantive matters or issues on the merits, is permitted, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication." Jud.Cond.R. 2.9(A)(1). Here, the communications in question were not about the merits of the case, they were about proper emergency or administrative security issues. Rather, the deputies overheard comments about taking over the courtroom or otherwise disrupting proceedings.

Therefore, it was proper to bring these emergency/administrative concerns to the trial court's attention ex parte. Whether the court's response was appropriate is a different question.

{¶ 26} The usual practice is for a defendant to appear in court while free of shackles. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 79, citing *State v. Woodards*, 6 Ohio St.2d 14, 23 (1966). This is the accepted procedure because the presence of restraints tends to erode the presumption of innocence. *Id.*, citing *State v. Carter*, 53 Ohio App.2d 125, 131 (4th Dist.1977). But it is widely accepted that a prisoner may be shackled where there is a danger of violence or escape. *Id.*, citing *Woodards* at 23. The decision to shackle is left to the sound discretion of the trial court. *Id.*, citing *State v. Richey*, 64 Ohio St.3d 353, 358 (1992).

{¶ 27} In this case, it is clear that, notwithstanding having received some information about the potential risk White and his co-defendant might have posed to the safety of the courtroom and persons present, along with recommended restraints as a precaution, the trial court was mindful of how implementing these recommendations might be viewed by the jury. The transcript reads in relevant part as follows:

> THE COURT: Okay. I was informed -- it was last Thursday -- that there had been some discussions by the two Defendants relative to the possibility of trying to hijack the courtroom. This was by a witness that was investigated by the sheriff's department. Don't know if those words were ever transposed [sic] between you guys, but I'm going to be up on utmost security because of it.
>
> At that point in time, I had a discussion with Corporal Davis from the sheriff's office. I've also had discussions with [the] Sheriff.
>
> * * *
>
> I have some concerns about security. We went though the various options. There's some precautions I took. It's my understanding that Mr. Boone currently has a belt on him * * *. Okay. Now, you guys will be manacled together underneath the table. * * *
>
> * * *

Now, we're going to leave the front rows empty, and basically everybody will be checked coming in, okay?

Now, Corporal Davis, did I misstate anything in what I put on the record?

CORPORAL DAVIS: No, Your Honor, you didn't.

THE COURT: Okay. Gentlemen, the question I have left is, do I handcuff you?

Now, we have to have an understanding here. It's the deputies' request that I handcuff you, but I want you to have a fair trial, okay? I won't do anything about the manacles. I've got two of you, so that's got to be between the two of you, okay? If I have any problems, the cuffs are going on, guys, okay?

[APPELLANT]: Yes, sir.

* * *

CORPORAL DAVIS: Just for the record, on behalf of the sheriff's department, Corporal Thomas Davis, I would like to formally request on behalf of the sheriff's office, due to both these individuals being in enough physical altercations and fights in the jail, that they've both been placed in administrative segregation, which is 23-hour lockdown because they don't get along safely with other people that are in the jail, when they're moved about, they're both moved by two deputy supervisors, handcuffs, leg irons, and with a marked chain, which is, what we call, a belly chain, on behalf of the sheriff's office, I would request that they both wear that. I know that Your Honor has his discretion to do whatever you want, but on the record for the sheriff's office, I would like to request that.

THE COURT: Okay. Well, as of now, I expect them to act appropriately. If I have one inkling, I have no problem putting them on, okay?

My job is to give you a fair trial, but, gentlemen, I'm not going to have anybody turn this courtroom upside down.

(Tr. 46-48.)

{¶ 28} The trial court did not abuse its discretion by engaging in permitted ex parte communications with the Sheriff's Office regarding emergency and administrative security matters or when it held a hearing at which it acted upon the advice of the Sheriff's Office by manacling the defendants' legs under the table in a way that would not have been obvious to the jury. White's fourth assignment of error is overruled.

## IV. CONCLUSION

{¶ 29} For the foregoing reasons, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER, J., concurs.
BRUNNER, J., concurs in part and dissents in part.

BRUNNER, J., concurring in part and dissenting in part.

{¶ 30} I respectfully offer this opinion on matters discussed by the majority, concurring in judgment as to the first, second, and fourth assignments of error, and dissenting from the opinion of the majority on its resolution of appellant's third assignment of error. For ease of review, this separate opinion sets forth discussion according to the four assignments of error.

**Concurring on the Majority's Opinion as to Appellant's First Assignment of Error**

{¶ 31} I would augment the majority's discussion of the first assignment of error, in which appellant asserts that, as a defendant named in a criminal indictment and trial, he was deprived of his right to the effective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16, of the Ohio Constitution, based on the actual and potential conflicts of interests the defendant's trial counsel had in the case. I would acknowledge that a pending criminal case against a defense attorney by the same prosecutor's office or in the same jurisdiction as that which prosecutes the attorney's client can create a conflict of interest. *See, e.g.*, *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070; *State v. Foster*, 10th Dist. No. 90AP-05 (Nov. 6, 1990); *United States v. Levy*, 25 F.3d 146 (2d Cir.1994); *United States v. McLain*, 823 F.2d 1457 (11th Cir.1987); *United States v. De Falco*, 644 F.2d 132, 138-39 (3d Cir.1979).

{¶ 32} For instance, in *Levy*, the conflict arose not only from the fact that the defense attorney was awaiting sentencing on his own offenses in the same district as the defendant, but also from the fact that the defense attorney was a potential witness in the defendant's case, represented another client with interests possibly adverse to the defendant, and was under investigation for allegedly aiding a co-defendant in absconding to Israel.  *Levy* at 150-52.  In *McClain*, the appellate court analyzed the different treatment counsel gave his own situation compared to his defendant's case in concluding that an actual conflict existed.  *McClain* at 1463-64.  In *De Falco*, the appellate court considered the exact extent to which the client was aware of his attorney's legal troubles and the fact that the attorney appeared to have misled the client about the extent of the problems, their potential to affect the client's representation, and the potential that further fact development might or might not show waiver of the conflict by the client. *De Falco* at 134, 136-37.  In *Dean*, it was not merely the fact of looming criminal contempt charges that required reversal, but the fact that the judge bringing the contempt charges (who was also the trial judge in that defendant's trial) had a personal bias against the defense attorneys involved.  Similarly in *Foster*, it was not general or unrelated legal problems of defense counsel that created a problem.  Rather *Foster* concerned allegations against defense counsel by the trial court and the prosecuting attorney in the defendant's trial that had an impermissible chilling effect on defense counsel's ability to vigorously litigate the trial.  I agree with the majority that the cases cited by White do not support the argument that the mere fact of indictment or investigation per se creates a conflict requiring reversal.  Rather, a detailed examination of the factual circumstances is necessary. We do not have this in the record, and thus, I agree with the majority that appellant's first assignment of error should be overruled.

**Concurring on the Majority's Opinion as to Appellant's Second Assignment of Error**

{¶ 33} As to appellant's second assignment of error, I concur with the majority's resulting opinion but would add discussion to what is stated in the majority opinion (that the trial court erred when it instructed the jury that it had to find defendant not guilty of aggravated murder before it could consider lesser-included offenses, the so-called "acquittal first" instruction held improper in *State v. Thomas,* 40 Ohio St.3d 213

(1988),and further erred when it instructed on the aggravated murder charges in Counts 7 and 8 without also instructing on the lesser offense of murder, along with ineffectiveness of defense counsel in failing to object).  I would note that, a jury in a criminal case cannot "find" anything by less than a unanimous number.  Ohio Constitution, Article I, Section 5; Crim.R. 31(A).  If there is no unanimity, the jury has not made a "finding" that the state "failed to prove" anything; rather, it is hung.  It was impermissible for the jury to "find the State has failed to prove prior calculation and design" and then "find the Defendant not guilty of Aggravated Murder" with anything other than unanimity.  Hence the trial court was implicitly instructing the jury that before considering the lesser offense of murder, its members needed to unanimously "find the Defendant not guilty."  Or, to put it more simply, the trial court by its instruction guided the jury to acquit on aggravated murder before considering murder, exactly as is prohibited by the rule in *Thomas*.

{¶ 34} The holdings that distinguished *Thomas* cited by the majority and offered by the state, such as *State v. Wright*, 10th Dist. No. 00AP-985 (Nov. 13, 2001); *State v. Greene*, 10th Dist. No. 90AP-646 (Mar. 31, 1998); *State v. Hawkins*, 10th Dist. No. 97APA06-740 (Mar. 24, 1998); *State v. Roe*, 10th Dist. No. 92AP-334 (Sept. 22, 1992), for nearly identical instructions held to be not so improper as to require reversal even though they were poorly written and though better instructions would have incorporated the "inability to agree" language adopted by *Thomas* are not to be disparaged.  However, I believe it is time more trial courts begin to eschew the barely acceptable instructions that have been heretofore used to "scrape by" in assisting a jury to assess evidence and attempt to reach a verdict.  Rather, I would prefer to see a jury embrace the instructions regarding the "inability to agree" that were expressly adopted and recommended by *Thomas* and that have been quoted by the majority in its opinion.  The trial court should have given the *Thomas* instruction, either substantially as adopted by *Thomas* or as set forth in the Ohio Jury Instructions.  Failure do so was error.  However, I agree with the majority that, because appellant's trial counsel failed to object to the trial court's instruction or to request a proper *Thomas* instruction that we can only take notice of this if it is plain error; I agree with the majority that it was not plain error, and thus, that appellant's second assignment of error should be overruled.

**Dissenting from the Majority's Opinion as to Appellant's Third Assignment of Error**

{¶ 35} As to appellant's third assignment of error, I dissent from the opinion of the majority and would sustain appellant's third assignment of error. Appellant posits that the trial court erred in instructing that flight could be considered as evidence of guilt where appellant claimed self-defense and presented other, factual explanations for his flight. At trial, it was undisputed that White left the scene of the shooting on foot, disposed of the gun in the trash, checked into a hotel under someone else's name, and stayed there for several days, spending time with his daughter and consulting with an attorney before voluntarily turning himself in to police. The prosecution argued that this behavior was not the behavior of a person who had acted in self-defense and that it showed consciousness of guilt. The defense argued that White fled the scene initially because he was afraid for his life and that he stayed in the hotel under an assumed name to give himself the opportunity to retain and consult with a lawyer and spend time with his daughter before surrendering himself. The trial court, over objection by the defense, instructed the jury as follows:

> In this case, there was evidence that the Defendant Vincent White fled from the scene. You are aware – I mean – you are instructed that you may not presume the Defendant guilty from such evidence. You may, however, infer a consciousness of guilt regarding the evidence of the Defendant's alleged flight. An accused's flight and related conduct can be considered evidence of consciousness of guilt and thus of guilt itself.

(Tr. 2021.)

{¶ 36} White argues that it was error for the trial court to have given an instruction on flight in this case because there were explanations for his behavior after the shooting other than consciousness of guilt and that the trial court, in giving such an instruction, was granting a judicial imprimatur of the prosecution's view of the facts. Essentially White argues that, in giving that instruction and only that instruction, the judge picked a side and implicitly recommended a factual inference to the jury. White does not cite, nor was I able to find, a factually similar case sustaining his argument in the context of a flight instruction. However, White does cite cases regarding jury instructions about factual

inferences that may be drawn from a refusal to take a breath test in an OVI case. (White's Brief, 48-53, citing *Maumee v. Anistik*, 69 Ohio St.3d 339 (1994); *Columbus v. Maxey*, 39 Ohio App.3d 171 (10th Dist.1988).)  I would find these cases persuasive.

{¶ 37} In *Maxey*, the defendant was arrested for allegedly driving under the influence and he refused to take a breathalyzer based on his desire to seek the advice of counsel first.  *Maxey* at 172.  The trial court instructed the jury that "you may consider, as part of the evidence, that the defendant's refusal of the examination was because he believed that he was under the influence of alcohol at the time the refusal was made."  *Id.* at 173-74.  In reversing, this court pointed out that "a judge in instructing a jury should not single out parts of the testimony and instruct as to the fact such testimony tends to prove.  This places undue weight upon a part only of the evidence."  *Id.* at 174, citing *Lambert v. State*, 105 Ohio St. 219 (1922); *Morgan v. State*, 48 Ohio St. 371 (1891).  Then we concluded that, in instructing the jury, "the court failed to include the possibility that [Maxey] refused in good faith to take the test.  Therefore, his instruction was incomplete and prejudicial to [Maxey]." *Id.*

{¶ 38} In *Anistik*, the Supreme Court of Ohio confronted a somewhat similar situation. The defendant there initially refused to take a breath test because she was concerned about whether medication she was taking for her kidneys would affect the results.  *Anistik* at 343.  Upon being assured that it would not, she agreed to take the test. *Id.*  But then she withdrew her consent again after being denied access to the bathroom and speaking with her attorney.  *Id.*  Despite these explanations for her refusal, the trial court instructed the jury that "refusal may but it is not required to be considered by you as evidence that the defendant's refusal to submit to a chemical analysis was because the defendant believed she was under the influence of alcohol.  You may consider this evidence along with all the other facts and circumstances in evidence if you wish." *Id.* at 341.  In affirming the lower appellate court's reversal of the trial court, the Supreme Court reasoned as follows:

> [A]n instruction by a trial judge to a jury, with regard to a defendant's refusal to submit to a chemical test, must not be one-sided. It is, of course, permissible for a trial judge to instruct a jury that the defendant's refusal to submit to a chemical test is evidence of his or her intoxication at the time

> of the taking of the test. However, the trial judge should not invade the province of the jury. That is precisely what occurred in the instant case when the trial judge charged the jury that they could consider the fact that appellee refused to take the test "because the defendant believed she was under the influence of alcohol."
>
> The reason appellee refused to take the breath test is a disputed issue of fact to be resolved by the jury. As is apparent here, circumstances may exist where the refusal to submit to a chemical test by a person suspected of driving while under the influence of alcohol is not based on consciousness of guilt.

*Id.* at 343-44.

{¶ 39} In the case under review there are competing explanations for why White left the scene, disposed of the gun, stayed in a hotel under another's name, and turned himself in. The state argued that he did so to avoid capture because he knew he was guilty of murder. The defense argued that he left the scene, fleeing for his life after being robbed at gunpoint and having been forced to defend himself. The defense further argued that then, realizing that he might be in trouble for possessing the gun and buying drugs (and perhaps even being wrongly implicated as a murderer), White disposed of the gun and stayed in a hotel to avoid capture long enough to retain counsel and put his family affairs in order before embarking on an arduous attempt to clear his name. The state's view, that White was guilty and attempting to evade capture, perhaps does a better job of explaining disposal of the gun. White's explanation, that he wanted to avoid potential retribution from associates of the people he shot and wanted a little breathing space to get a lawyer and put his affairs in order, perhaps does a better job of explaining why he voluntarily turned himself in. Both the state and White's explanations competently explain why White left the scene and stayed in a hotel under another person's name. In my view, it was not an abuse of discretion for the trial judge to have instructed on flight because there was evidence of flight. But I believe it was error for that instruction to have endorsed the state's preferred inference to the exclusion of White's.

{¶ 40} The Supreme Court, in *Anistik*, endorses a more factually neutral instruction:

"Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol."

*Id.* at syllabus, quoting 4 *Ohio Jury Instructions* 405, Section 545.25(10) (1993): A similarly balanced instruction should have been given in this situation. The trial court should have instructed more neutrally, for example, as follows:

Evidence has been introduced indicating the defendant fled the scene of the shooting, discarded his gun, and thereafter stayed in a hotel under another's name, spent time with his daughter, and hired a lawyer, before voluntarily turning himself in. If you find the defendant engaged in this conduct, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant is guilty of the offenses charged.

This appropriately draws the jury's attention to all of White's behavior following the shooting and reminds the jury that there are inferences that may be drawn from such behavior without suggesting that the trial court prefers one side's inferences over the other's.[5]

---

[5] I would also note that the Ohio Jury Instructions include a template for an instruction on consciousness of guilt that, unlike the instructions given in this case, explicitly alerts the jury to the possibility that other motivations for flight may exist.

Testimony has been admitted indicating that the defendant (fled the [scene] [*describe jurisdiction*]) (escaped from custody) (resisted arrest) (falsified his/her identity) (changed appearance) (intimidated a witness) (attempted to conceal a crime) (*describe other conduct*). You are instructed that (*describe defendant's conduct*) alone does not raise a presumption of guilt, but it may tend to indicate the defendant's (consciousness) (awareness) of guilt. **If you find that the facts do not support that the defendant (*describe defendant's conduct*), or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose**. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by (a consciousness) (an

{¶ 41} In opposition to the reasoning above, the state argues that the word "may" in the instruction leaves open the possibility that the jury could have chosen not to infer "consciousness of guilt" and instead credit the defendant's explanation. (State's Brief, 35-36.) This court has held that the word "may" in a flight instruction appropriately preserves the jury's role to find that the defendant did or did not flee and that he did or did not have a guilty conscience. *State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 31; *State v. Shepard*, 10th Dist. No. 07AP-223, 2007-Ohio-5405, ¶ 8.

{¶ 42} However preserving the fact-finding role of the jury is not the concern White raises, nor is it the reason on which I would reverse. I agree that the word "may" in the trial court's instruction allowed the jury to decide whether or not to believe that White fled, and if he did, whether or not to believe that he had a guilty conscience. What I would find to be improper is that the trial court's instruction suggested only the prosecution's preferred inference. In both *Maxey* and *Anistik*, the original jury instructions included the word "may" at the relevant juncture, and yet, that did not solve the unfairness inherent in suggesting only the state's preferred factual inference to the jury. *Anistik* at 341, quoting the Jury Instructions (disapproving of an instruction that "refusal *may* but it is not required to be considered by you as evidence that the defendant's refusal to submit to a chemical analysis was because the defendant believed she was under the influence of alcohol. You *may* consider this evidence along with all the other facts and circumstances in evidence if you wish.") (emphasis added.); *Maxey* at 173-74 (disapproving of the instruction "you *may* consider, as part of the evidence, that the defendant's refusal of the examination was because he believed that he was under the influence of alcohol at the time the refusal was made"). (Emphasis added.) The word "may" does not disturb the conclusion that the jury instructions given in this case (where there were competing inferences about White's flight) impermissibly preferred the prosecution's inference to the exclusion of the defense's inferences.

---

awareness) of guilt, you may, but are not required to, consider that evidence in deciding whether the defendant is guilty of the crime(s) charged. You alone will determine what weight, if any, to give to this evidence.

(Bold emphasis added.) Ohio Jury Instructions, 2CR Section 409.13 (Rev. Aug. 17, 2005).

{¶ 43} The state also argues that giving a flight instruction is a matter of discretion and that where the evidence supports such an instruction, reversal is inappropriate. The state is correct; whether or not to give a flight instruction is a matter within the trial court's discretion. *See, e.g., State v. Hill*, 8th Dist. No. 98366, 2013-Ohio-578, ¶ 48. Under typical circumstances, if there is sufficient evidence to show that a defendant attempted to avoid apprehension, a flight instruction is proper. *Id.* at ¶ 49. However this argument misses the point. White does not argue that there was insufficient evidence in the record to justify an instruction about flight; rather, White argues that it was improper to give a flight instruction endorsing only the inference preferred by the state where the facts supported and the parties argued more than one inference. None of the cases the state cites squarely addresses this same fairness issue. *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997) (declining to find plain error in a flight instruction where the defendant testified and the instructions included consideration of the defendant's explanations for his flight); *Bass* at ¶ 2, 25-32 (overruling an argument that the flight instruction failed to permit the jury to consider other inferences besides guilty conscience where the defendant presented no other reasons for having led the "police on a seven or eight minute car chase"); *State v. Nichols*, 9th Dist. No. 24900, 2010-Ohio-5737, ¶ 7-13 (declining to find plain error or sustain an argument that a flight instruction told a jury that a fact essential to the conviction had been established by the evidence where the instruction considered other motives for the defendant's conduct); *State v. Jeffries*, 182 Ohio App.3d 459, 2009-Ohio-2440, ¶ 78-83 (11th Dist.) (overruling an argument by a defendant that "there was no evidence of flight" and finding that the trial court did not abuse its discretion in giving a flight instruction); *Shepard* at ¶ 5-9 (overruling arguments that the flight instruction was too terse and confusing); *State v. Banks*, 10th Dist. No. 03AP-1286, 2005-Ohio-1943, ¶ 20 (declining to allow a defendant to reopen his appeal where the flight instruction was not arbitrary or unreasonable and did not create an improper mandatory presumption); *State v. Draper*, 10th Dist. No. 02AP-1371, 2003-Ohio-3751, ¶ 7-8, 30-33 (declining to find either plain error or ineffective assistance of counsel in trial counsel's failure to object to a flight instruction that did not contemplate innocent explanations for flight where the defendant was combative at a traffic stop, admitted he fled the police, and apparently failed to offer any innocent explanation for his flight).

{¶ 44} Had White not explained his flight and offered alternative inferences for the jury's consideration, the trial court's flight instruction would have been proper. However, where there are competing inferences, such as are here, I would find that it is improper to instruct on only one side's suggested inference. Like the instructions in *Maxey* and *Anistik*, the instruction given by the trial court in this case suggested that the jury consider only the state's preferred factual inference. As such, like the instructions in *Maxey* and *Anistik*, it was improper and prejudicial, and I would sustain White's third assignment of error.

**Concurring on the Majority's Opinion as to Appellant's Fourth Assignment of Error**

{¶ 45} I concur with the majority as to its discussion and decision on appellant's fourth assignment of error.

———————————